PAGE & JONES *v.* UNITED STATES (No. 4135)[1]

United States Court of Customs and Patent Appeals, June 6, 1938

*Philip Stein* for appellants.

*Charles D. Lawrence*, Acting Assistant Attorney General (*Charles J. Miville*, special attorney, and *Alfred A. Taylor, Jr.*, junior attorney, of counsel), for the United States.

[1] O. A. D. 5.

[Oral argument April 15, 1938, by Mr. Stein and Mr. Lawrence]

Before GARRETT, Presiding Judge, and BLAND, HATFIELD, and LENROOT, Associate Judges

BLAND, Judge, delivered the opinion of the court:[2]

This is an appeal from the judgment of the United States Customs Court, Second Division, overruling the protest of appellants against the assessment of duty, by the Collector of Customs at the port of Mobile, Ala., on a certain repaired steam turbine engine. The collector had levied duty thereon at the rate of 20 per centum ad valorem under the provision for "steam turbines" and parts thereof in paragraph 372, Tariff Act of 1930. The importers protested, claiming that the merchandise. was entitled to free entry on the ground that it was not an importation within the meaning of the tariff act, or that, if it be held to be subject to the act, it was properly dutiable at said rate of 20 per centum under paragraph 372 on the value of the repairs only, by virtue of the provisions of paragraph 1615 of said act.

The facts are not in dispute and may be summarized as follows: The steamship *San Fernando*, a vessel of British registry, was bound for Mexico, without load, when she became disabled on the high seas and was towed into the port of Mobile. It developed that the turbine engine and parts had to be shipped to England for repairs. The unrepaired turbine engine and parts and the same when repaired will hereinafter be referred to as an "engine." After consultation with the customs officials, entry was made on customs Form 7512 "Transportation entry and manifest of goods subject to customs inspection," and the said machinery was taken off the vessel and shipped to England to be repaired. On said entry the merchandise is described as being "ON BOARD SS 'SAN FERNANDO' TO BE UNLOADED AND RELOADED TO SS 'AFOUNDRIA' AT STATE DOCKS." About five months later, during which time the *San Fernando* was tied up at the Mobile dock, the engine, after being repaired, was returned to the United States from England, and was entered by filing a consumption entry, duty being paid not only on the repairs but on the value of the repaired machinery. Concerning the filing of the "Transportation entry" and the consumption entry, the following is quoted from the testimony of J. Frank Jones, appellants' customhouse broker:

Q. Will you state what you did in connection with filing the customs importation entry on the form, orange 7512, how you came to draw that up?—A. Well, to begin with, I did not know what procedure was required, so I talked to the local customs here, and I was of the opinion at that time that the proper way to handle it was to register the shipment under the tariff paragraph which permits importation of machinery with repairs with a limitation of duties on the repairs only, but we were not able to find anything in the regulations on that. They took the position that that applied only to duty-paid merchandise. So, to make

[2] JACKSON, Judge, took no part in the consideration or decision of this case.

a long story short, after a long discussion, it was decided this was the only way it could be handled.

Q. Now when it came back repaired, what took place then?—A. When it came back we had to file a regular consumption entry.

Q. The customs officials here demanded that?—A. Yes, sir.

There is testimony in the record that application was made to the Bureau of Customs for a drawback rate but that it was denied. Said witness Jones admitted that importers were not entitled to drawback for the reason that duty had not been paid before the goods were shipped abroad.

The record further shows that immediately upon arrival of the repaired machinery in the United States, it was installed in the *San Fernando*, and that it did not enter into the commerce of this country and was never intended by anyone to be made a part of the commerce of the United States.

The pertinent provisions of the Tariff Act of 1930 and the Customs Regulations of 1931 to be considered follow:

### *Tariff Act of 1930*

Section 1. That on and after the day following the passage of this Act, except as otherwise specially provided for in this Act, there shall be levied, collected, and paid upon all articles when imported from any foreign country into the United States or into any of its possessions (except the Philippine Islands, the Virgin Islands, American Samoa, and the island of Guam) the rates of duty which are prescribed by the schedules and paragraphs of the dutiable list of this title, namely:

Par. 372. * * * steam turbines, 20 per centum ad valorem; * * * *Provided,* That parts, not specially provided for, wholly or in chief value of metal or porcelain, of any of the foregoing, shall be dutiable at the same rate of duty as the articles of which they are parts * * *.

Par. 1615. * * * articles exported from the United States for repairs may be returned upon payment of a duty upon the value of the repairs at the rate at which the article itself would be subject if imported, under conditions and regulations to be prescribed by the Secretary of the Treasury * * *.

### *Customs Regulations of 1931*

*Art. 151. Foreign vessels wrecked in American waters.*—The equipment and ship stores of a foreign vessel wrecked in waters of the United States, on being recovered and brought into port and the materials and equipment of a foreign vessel condemned and dismantled in a United States port are free of duty. Such materials, equipment, and stores taken from a foreign vessel wrecked outside the waters of the United States are dutiable.

\*        \*        \*        \*        \*        \*        \*

*Art. 403. Articles exported for repairs.*—

\*        \*        \*        \*        \*        \*        \*

(b) The foregoing provision of law [referring to paragraph 1615, *supra*] applies to articles of either foreign or domestic origin.

(c) Prior to the exportation of such articles, an affidavit and application, in duplicate, on customs Form 4455, shall be filed with the collector of customs a sufficient time before the departure of the exporting conveyance to permit of the examination of the articles.

\*　　\*　　\*　　\*　　\*　　\*　　\*

Article 403, *supra*, was amended by T. D. 46631, 64 Treas. Dec. 239, by adding the following thereto:

In cases where an article exported and repaired abroad is imported by a person not a regular importer, and the exportation was not made in accordance with these regulations, the collector, if satisfied as to the bona fides of the transaction and that the exporter was ignorant of the regulation requirements, may waive the production of the certificate of registration (customs form 4455) and compliance with so much of these regulations as relates to the exportation under such certificate.

Appellants in this court stress two main points of law which they argue must be applied to the facts in this case so as to afford the relief sought in the protest, and we will state and decide them in the order in which they are argued in appellants' brief: First, that the bringing in of the repaired engine, being an integral part of the British vessel *San Fernando* (and necessary to operate the same), was not an importation of merchandise within the meaning of the Tariff Act of 1930; second, that if any duty should have been assessed by the collector, it should have been upon the value of the repairs only and not upon the value of the entire engine or the cost of either, by reason of said paragraph 1615, and that if the entire engine is properly dutiable under paragraph 372 as assessed by the collector, he should have had the engine appraised according to one of the values defined in section 402, Tariff Act of 1930, which appellants claim was not done.

Upon the first point, appellants take the position that section 1 of the tariff act, which requires that duty shall be levied, collected, and paid upon all articles when imported from any foreign country into the United States, does not include or cover the engine for the reason that under certain authorities, which will be hereinafter discussed, it was not "imported." On this phase of the case, reliance is placed on the cases, among others, of *United States* v. *Cronkhite Co.*, 9 Ct. Cust. Appls. 129, T. D. 37980; *United States* v. *Estate of Boshell*, 14 Ct. Cust. Appls. 273, T. D. 41884; *Pedro Avalos* v. *United States*, 58 Treas. Dec. 319, T. D. 44277; *Fairbanks Morse & Co.* v. *United States*, 69 Treas. Dec. 513, T. D. 48217; and *United States* v. *Porto Rico Coal Co.*, 17 C. C. P. A. (Customs) 288, T. D. 43716.

The *Cronkhite* case, *supra*, involved the question as to when goods which had been first entered for transportation and later for consumption had been imported in a case where there was a change of statute between the time when the goods arrived at the original port and the

date upon which a formal entry for consumption was made. In deciding the question involved, the court said:

Tariff laws have usually been enacted for protective as well as revenue purposes. The portion of the revenue act herein reviewed is distinctively a protective measure. Bearing the purpose of the act in mind, it would seem obvious that the time when it was necessary that it should go into effect in order to become effective was when goods entered into the commerce of the country. Until then, that they would enter into the commerce of the country was not certain, and their exact competitive force, when entering the commerce of the country, was as yet undetermined by reason of the fact that a greater or lesser amount of duties might be levied thereupon. Accordingly we must naturally assume that such merchandise would not be deemed by Congress to be "imported" within the language of the act until it had passed beyond the custody and control of the customs officials and into the custody and control of the importer, his agent or consignee, thereby becoming a part of the body commerce of this country. * * *

The question presented there is not the question presented here. In that case the effect of paragraph Q of the tariff act of 1913, when considered in connection with a subsequent change of law, was involved. The language used had particular application to that question. But, it seems to us that even if the letter of the language there used should be applied to the facts in this case, it cannot be concluded that the goods here had not passed out of customs custody as far as it was ever intended for them to pass out of such custody before they left the port.

In the *Boshell* case, *supra*, this court used the following language:

The common ordinary meaning of the word "import" is to bring in. Imported merchandise is merchandise that has been brought within the limits of a port of entry from a foreign country with intention to unlade, and the word "importation" as used in tariff statutes, unless otherwise limited, means merchandise to which that condition or status has attached.

That case involved a determination of the "date of importation." The instant record clearly shows that the engine involved was brought within the limits of the port of entry from a foreign country with intention to unlade, and discloses no other means by which the repairs could be made except that the engine be taken out of the vessel and shipped from the port.

The case of *Pedro Avalos* v. *United States*, *supra*, involved the question as to whether a certain marine engine taken from a wrecked Mexican vessel was dutiable. The Customs Court held that the merchandise had not been imported and that the "materials and rigging of a foreign vessel cast upon our shores as a wreck, when landed and sold, do not come within the purview of the revenue laws as merchandise imported." Its decision was based, in part, upon the holding in *Van Camp Sea Food Co. (Inc.)* v. *United States*, 56 Treas. Dec. 415, T. D. 43661, where a gas engine which had not entered the commerce of a foreign country, having been salvaged in foreign waters from the

wreck of an American boat, was not an import for the reason that the engine was an American engine and had never been exported.

Regardless of the merits of the two last-cited cases, it is not thought that either the facts or the holdings therein are sufficiently on all fours with the issue at bar as to require a holding here that the instant record does not disclose that the engine at bar was imported. The distinction between the facts involved in those cases and those involved here is so obvious as to require no further discussion here.

The decision in *Fairbanks Morse & Co.* v. *United States, supra,* involved the question as to whether two diesel marine engines were dutiable as parts of motor boats. The engines had been manufactured in the United States and installed in an American ship. They were removed from the ship, which had been towed to Canada, and sent back to this country, and it was contended that they were American goods returned. They were held to be free of duty on the theory that there was no intention to export them and that they had not, therefore, been imported. It is obvious that this case is no authority for a holding such as appellants seek here.

The holding of this court in *United States* v. *Porto Rico Coal Co., supra,* that the steam tug *Berwind* belonged to a class of property distinguished from goods which the tariff law regarded as the subject of importation and, therefore, was not dutiable, is certainly no authority for holding that an engine which is separated from a vessel and landed in the United States does not become imported merchandise after such separation and landing.

The Government has relied for supporting authority of the judgment appealed from upon the following cases: *Cunard S. S. Co.* v. *Mellon,* 262 U. S. 100; *United States* v. *Estate of Boshell, supra; United States* v. *Field & Co.,* 14 Ct. Cust. Appls. 406, T. D. 42052; *Henry Hollander Co.* v. *United States,* 22 C. C. P. A. (Customs) 645, T. D. 47632; *Agency Canadian Car & Foundry Co.* v. *United States,* 10 Ct. Cust. Appls. 172, T. D. 38547; and others.

In *Cunard S. S. Co.* v. *Mellon, supra,* where the bringing into the territorial waters of this country of liquor during the life of the National Prohibition Act was concerned, the court defined "importation" in the following language:

\* \* \* Importation, in a like sense, consists in bringing an article into a country from the outside. If there be an actual bringing in it is importation regardless of the mode in which it is effected. Entry through a custom house is not of the essence of the act.

In *United States* v. *Field & Co., supra,* this court cited the *Cunard S. S. Co.* v. *Mellon* case, *supra,* and on the subject of "importation" said:

\* \* \* Unless it clearly appears that Congress otherwise intended, the word "importation" means the bringing of goods within the jurisdictional limits of the United States with the intention to unlade them. \* \* \* \*

\*     \*     \*     \*     \*     \*     \*

\* \* \* The court sees no reason for receding from the decision reached in the *Boshell* case which was concurred in by all the members of the court and we must regard that case as decisive of the legal question raised by the present appeal. To do otherwise would result in ignoring the definitions given to the word "importation" by the Federal appellate courts and in a substantial reversal of many of the cases cited in Judge Barber's opinion.

In a more recent case, *Henry Hollander Co.* v. *United States, supra,* concerning the term "importation" this court had the following to say:

Generally, however, and unless the contrary clearly appears, the word "importation" means "the bringing of goods within the jurisdictional limits of the United States with the intention to unlade them." *United States* v. *Field & Co.,* 14 Ct. Cust. Appls. 406, T. D. 42052, and cases cited; *Cunard S. S. Co.* v. *Mellon,* 262 U. S. 100.

The case which seems to be most in point, however, is *Agency Canadian Car & Foundry Co.* v. *United States, supra.* That case involved shrapnel projectiles, high explosive projectiles and brass cases which were shipped from Canada during the World War to be further manufactured in this country. The merchandise was entered for consumption and duty was paid thereon. A portion of the shells was destroyed in the United States in an explosion. Protest was filed and a claim for refund of duty upon the shells destroyed was made. The claim was based upon the theory that the shells had never been imported since it was the intention of the importer to export the shells with benefit of drawback after they had been further processed. This court, however, held that the merchandise had been imported even though it had not been sold or had not entered into the commerce of the United States, and said:

The claim that the materials for munitions were not imported, inasmuch as they were not unladen at destination with the intent that they should mingle with the mass of things belonging to the United States and become a part of the commerce of the country, can not be sustained. To hold otherwise would make the mental attitude of the owner, shipper, or consignee, instead of what was done, the controlling factor in determining whether merchandise was or was not imported. More than that, it would wholly ignore the fact that such munitions came within the customs jurisdiction and were designedly unladen for manufacturing purposes in the United States in just the same way as other merchandise arriving from abroad and intended for manufacture and exportation. Indeed, if we hold that the materials in this case were not imported *because there was no intention to mingle them with the trade and commerce of the country inasmuch as it was the purpose to export them after being made up into articles ready for use,* then all other merchandise coming into the country from abroad and intended for exportation after manufacture must likewise be held not to be imported, and any such ruling as that would in effect render inoperative not only the tariff provisions for drawback but also those for bonded manufacturing warehouses.

The case of *United States* v. *Coastwise Steamship & Barge Co.,* 9 Ct. Cust. Appls. 216, T. D. 38047, was relied upon by the trial court as

supporting authority for its judgment. There, an outbound American ship was wrecked. Later she was salvaged and her engine was removed and sold in British Columbia. The purchaser repaired it and it was then shipped to Seattle where the collector assessed the same with duty. Upon protest, the trial court held that the engine was an importation and dutiable. In affirming the decision of the trial court, this court said:

When the *Delhi* left the United States we do not think that her engine could be regarded as an export, inasmuch as it was then an essential part of the vessel ready for operation, and consequently not intended to be commingled with or introduced into the trade or commerce of some other country. When, however, the engine was removed from the *Delhi* it lost its character as part of the vessel and became an engine, damaged it may be, but still an engine, or at all events a commodity which, even if taken abroad, retained its status as an American product. * * *

It seems to us that the last two authorities cited are particularly in point on the issue here involved. We also agree with the holding of the trial court in the instant case that:

* * * It was unquestionably a nonimportation and was so treated by the collector upon its original arrival in the United States, as an integral part of the *San Fernando*. But when it was removed from that vessel it became an engine and nothing more, and, as such, an article which may be exported and reimported, which was done. Upon its return it was a separate dutiable entity and was correctly so classified by the collector.

On the second contention of appellants that duty should have been taken upon the value of repairs only and not upon the entire engine, we think little need be said for the reason that even if it were conceded that the provisions of paragraph 1615 apply to the repairs of the engine in the instant case, there was no attempt to comply with the rules and regulations of the Treasury Department authorized by the paragraph. The appellants do not contend that they complied with the regulations but state that they acted in good faith and that the collector made a strict compliance with the regulations impossible. It was argued orally by appellants' counsel, in effect, that the collector by his conduct waived compliance with the regulations. There is nothing in this record to indicate that the collector either actually or constructively waived compliance with such regulations.

Appellants have argued at considerable length, under their second contention, that if the entire engine was dutiable under paragraph 372, as assessed by the collector, then the value of the engine on the date of exportation should have been taken in accordance with the defined values in section 402 of the tariff act. We understand this argument is made in support of appellants' second contention that duty should have been assessed only on the engine repairs. Appellants have not attempted to raise this question by protest except in the manner heretofore stated. It is our view that an issue relating to an erroneous

appraisement should be raised in a reappraisement proceeding and may not be considered here. Moreover, there is no assignment of error in the instant record properly raising the question.

In brief and in oral argument, appellants have pointed out that their consumption entry was made upon the advice of and in compliance with the demand of the collector. No protest was made against such a demand and as we understand this phase of appellants' argument it is to the effect that by reason of the collector's action the act of making a consumption entry does not now bar their right to protest and raise the two questions hereinbefore presented. We are in agreement with the importers that they are not barred from raising by protest the questions here presented, even if it be admitted that they had voluntarily made a consumption entry. *United States* v. *Porto Rico Coal Co., supra; Lee & Co.* v. *United States,* 15 Ct. Cust. Appls. 202, T. D. 42236.

It will be noticed from the opinion of the trial court that its action in overruling the protest was with reluctance. It appreciated, as we do, the seeming hardship that has been inflicted upon the importers and that it is unfortunate that they were required to pay customs duty amounting to $3,827.20 for goods which never went into the commerce of this country and which, as far as this record shows, were never intended to enter such commerce. It is regrettable that, as far as appears from the instant record, there was no remedy found in the Tariff Act of 1930 for the hardship complained of. Providing such a remedy is the province of the legislature and not of the courts.

The judgment of the United States Customs Court is *affirmed.*