## UNITED STATES

v.

## JOHN V. CARR & SON, INC.

Reapp. 460/5789, etc.;
Entry Nos. 6738; 5707; 1819; 2629.

United States Customs Court.
First Division, Appellate Term.
March 1, 1967.

Barefoot Sanders, Asst. Atty. Gen. (Bernard J. Babb, New York City, Trial Atty.), for appellant.

Swafford, Jahn & Taylor, Chattanooga, Tenn., Barnes, Richardson & Colburn, New York City (Joseph Schwartz, New York City, of counsel), Assoc. Counsel, for appellee.

Before OLIVER, WATSON and RAO, Judges.

WATSON, Judge:

This is an application for review of a decision and judgment of a single judge in a reappraisement proceeding (54 Cust. Ct. 513), Reap.Dec. 10902, involving the value of an importation of certain baling presses exported from Canada during the period July 1957 through September 1957.

The baling presses in question, four in number, were manufactured in Canada by Canadian Locomotive Co., Ltd., of Kingston, hereinafter referred to as Canadian, for Chattanooga Welding and Machine Co. of Chattanooga, Tenn., hereinafter referred to as Chattanooga, and shipped to American customers of the latter. The record discloses that the baling press is composed of two basic parts, namely, a superstructure and hydraulic power units or motors. It appears that only the superstructures were made by Canadian. The motors were furnished and shipped by Chattanooga to Canadian, which, in turn, assembled them to the superstructure which it manufactured on orders from Chattanooga, and then exported complete to the United States. In each case, what was purchased by Chattanooga and sold by Canadian consisted of only one part of a machine, although what was delivered and imported into this country consisted of a complete machine. It appears that no charge was made by Canadian for the motors which it assembled to the presses.

The merchandise was appraised at $96,000 Canadian currency, per machine, net packed, including $24,915 Canadian currency, per machine, representing United States materials constructively segregable, on the basis of foreign value, as defined in section 402(c) of the Tariff Act of 1930, as amended by the Customs Administrative Act of 1938.

The lower court in its decision held that the value of the motors is not in issue; that there was no export value of "such" baling presses because they were not offered for sale for exportation to the United States; that no "similar" baling presses were manufactured in Canada; that the only merchandise before

the court for valuation purposes was the "superstructure"; that there was no foreign value or export value or United States value for "superstructures" as such; that therefore "cost of production" was the proper basis of value for the superstructures. The court accepted appellee's unchallenged proof of the cost of production. The lower court further held that the appraised value of the United States material was not in dispute. In the present case, the appellant contends that what was imported was a complete baling press—a superstructure and motors—and that the complete baling press should be subject to appraisement as an entity under section 402 of the tariff act regardless of the fact that a portion of it may have been American goods returned.

The primary question here for consideration, in our opinion, is whether only the superstructure which was manufactured in Canada was subject to the valuation statutes or whether the baling press, complete with an American-made power unit in its imported condition, was properly considered by the appraiser for appraisement purposes. The appellant contends that the appraiser properly considered, for the purposes of appraisement the merchandise in its entirety, i. e. the complete baling press.

Paragraph 1615 of the Tariff Act of 1930, as amended, provides for the free entry of "articles, the growth, produce, or manufacture of the United States, when returned after having been exported, without having been advanced in value or improved in condition by any process of manufacture or other means." Where such articles are returned to the United States in combination with foreign manufactures, the merchandise is not to be assessed with duty as an entirety, but the American goods are entitled to free entry so long as they have not lost their identity as such nor have themselves been advanced in value or improved in condition. In such cases, it is incumbent upon the appraiser to make a return showing the value of the American goods separately. Border Broker-

age Company v. United States, 44 Cust. Ct. 688, Reap.Dec. 9687; Consolidated Sewing Machine Co., Inc. v. United States, 37 Cust.Ct. 314, Abstract 60179. This separation of values is essentially as an aid to the customs officials in assisting the latter in determining whether the segregable portion of the importation shall be exempted from duty under the special provision of said paragraph 1615. This is just what the appraiser did in the case at bar. He found a value for the complete baling press that was imported of $96,000 per machine, Canadian currency, of which $24,915 represents the value of the power units of American origin.

In the *Border Brokerage* case, supra, the court held that where American-made glass panels are combined in Canada with other components to produce electric heaters, only the American-made articles, provided they have not lost their identity or been advanced in value or improved in condition, are entitled to free entry under paragraph 1615 of the Tariff Act of 1930, as amended, and their value cannot be found by adding to their *per se* cost or value any part of the general expenses incurred and profits earned in Canada in connection with the manufacture of the electric heaters. In the case here cited, the appraiser made a separate return as to the value of the American-made glass panels. It may be noted, however, that the electric heaters under consideration were appraised at certain values which included the cost of the American-made glass panels. Likewise, the court in the *Border Brokerage* case, supra, in addition to making a finding as to the separate value of the glass panels, found in its "conclusion of law" that cost of production, as that value is defined in section 402(f) of the Tariff Act of 1930, is the proper basis for determining the value of the electric heaters here involved and that such values were the appraised values which included the cost of the American-made glass panels. It would accordingly appear that the court, in the *Border Brokerage* case, included in the "cost of production" of the merchandise there involved the American-

made glass panels. This determination, in our opinion, parallels the action of the appraiser in the case at bar and supports a finding that the value of the power units here under consideration should be included in the appraised value of the importation at bar as an entirety.

The appellee, in this case, as authority for the proposition that, where a shipment contains American goods returned, the American goods and the foreign goods must be appraised separately, also directs our attention to the *Consolidated Sewing Machine* case, supra. The merchandise there involved consisted of 26 sewing machines complete with electric motors and cases. The machines and motors were assessed with duty under paragraph 372 of the Tariff Act of 1930, as modified, as entireties, as sewing machines. The official papers disclosed that the merchandise was entered as 26 cases containing sewing machines, valued at over $10 and not over $75 each. The invoiced and entered unit value was 353 Swedish kronor, making a total entered value of 9,178 Swedish kronor, or United States $1,773. The merchandise was appraised as entered. It had been stipulated therein, however, that the electric motors contained in the importation were of American manufacture and, further, that they had not been advanced in value or condition while abroad. Plaintiff therein claimed that the sewing machine motors were entitled to free entry under paragraph 1615 of the said tariff act, as amended, as American goods returned. The court, in that case, held the electric motors properly classifiable as claimed. However, since the electric motors and the sewing machines were appraised as entireties, the court in the *Consolidated* case held the appraisement therein invalid and void. The protest in that case was held premature and the matter was remanded to a single judge to determine the proper dutiable values of the merchandise pursuant to the provisions of 28 U.S.C. § 2636(d). Upon remand, decided in Consolidated Sewing Machine Co. v. United States, 39 Cust.Ct. 526, V.D. 47, upon a stipulation entered into between the respective parties, the court

found separate values for the sewing machines and for the electric motors therein involved.

We are, of course, in agreement with the action of the court in the *Consolidated* case, supra, in remanding the matter therein to a single judge to determine the proper dutiable values of the involved merchandise and, to that extent, are in accord with the contention of the appellee that, in such circumstances, it is incumbent upon the appraiser to return a value for the American goods separate from the goods of foreign origin. It may be noted that the *Consolidated* case, supra, was a classification case, and the matter was specifically remanded to the single judge sitting in reappraisement to find separate values for the sewing machines and the motors. In the *Consolidated* case, supra, the appraiser found but one value for the total amount of the importation. In the case at bar, however, the appraiser did find a separate value for the power units of American origin, as required by law, and the situation in the present case is distinguishable to that extent from the situation which prevailed in the *Consolidated Sewing Machine* case, supra. Such separate finding of value in this case for the power units of American origin does not, in our opinion, minimize in any way the duty of the appraiser to appraise merchandise in its imported condition, in this case the superstructures complete with the American-made power units. As heretofore indicated, separate finding of his value for the imported American-made goods is merely to assist the appropriate customs officials in a determination whether such goods are entitled to the duty free provisions of the tariff act.

Section 500 of the Tariff Act of 1930 requires the appraiser to appraise imported merchandise. The meaning of imported merchandise, except where a statute provides otherwise, has been construed by our appellate court as *"merchandise* that has been brought within the limits of a port of entry *from a foreign country* with intention to unlade, and the word *'importa-*

*tion'* as used in tariff statutes, unless otherwise limited, means merchandise to which that condition or status has attached." [Italics quoted.] Porto Rico Brokerage Co., Inc, et al. v. United States, 76 F.2d 605, 23 CCPA 16, T.D. 47672; and Proctor & Gamble Manufacturing Co. v. United States, 19 CCPA 415, T.D. 45678. It seems clear that, unless there is a statutory exception, all merchandise, regardless of origin, including goods of American origin, is subject to appraisement upon importation from without into the country of the United States. In the case at bar, what was imported into this country was a complete baling press and the duty imposed upon the appraiser to "appraise" attaches to and does not exclude any portion or portions of the importation here which were of American origin, which latter portion, upon liquidation by the collector, may or may not be entitled, under paragraph 1615 of the Tariff Act of 1930, to free entry as American goods returned. Merely because the power units herein involved were of American origin does not, in our opinion, remove them from consideration for appraisement purposes, and the provisions of law exempting imported goods which are of American origin from the payment of duty do not constitute such goods as something other than an "importation."

Counsel for the appellant herein, in its brief, specially directs our attention to the holding of the court in the case of Donald G. Parrot v. United States, 40 CCPA 8, C.A.D. 490, which was cited by the court in the *Border Brokerage Co.* case, supra. The *Parrot* case, supra, involved the importation of a yacht which was built and outfitted in Newfoundland. It contained various parts which were of American origin and which had been exported to Newfoundland for the purpose of completing and outfitting the yacht. The appraiser found that the parts of American origin constructively segregable were valued for appraisement purposes at $4,245 and that the value of the goods of foreign origin was $12,755. The collector, while he allowed free entry to the goods of American origin as identifi-

able American goods, assessed duty on the remainder at the rate of 30 per centum ad valorem under paragraph 370 of the Tariff Act of 1930, as modified, which provides for motor boats and parts, including yachts. Appellant claimed that the imported merchandise should have been liquidated at 15 per centum ad valorem under said paragraph 370 at the reduced rate of duty on yachts valued at not more than $15,000. One of the importer's contentions was that the final appraised value of the yacht was the appraised value of goods of foreign origin in the amount of $12,755. The question before the appellate division of this court in the *Parrot* case, supra, was whether the collector was correct in applying the total value of the yacht, including the portion attributable to the segregable goods of American origin, to determine the rate of duty, although thereafter applying that rate only to the value of the goods of foreign origin. In affirming the decision of this court, which had overruled the protest, our appellate court in the *Parrot* case, supra, at page 11, quoted with approval the following language of the decision below:

* * * The portion identifiable as of American production was carved out of that price, *not because it was not an integral part of the yacht,* but because Congress had specifically provided that duty should not be assessed thereon. *For all other purposes, the American goods were a part of the yacht.* [Italics ours.]

The appellate court in the *Parrot* case, supra, pointed out that paragraph 370 of the tariff act in question, as modified, provided *inter alia* for

* * * motor boats * * * 30 per centum ad valorem * * * Motor boats, including yachts * * * *valued* at not more than $15,000 each, 15% ad valorem. [Italics quoted.]

and then at page 12, the court stated:

We fail to see how the term *"valued"* as used here can be taken to mean anything other than the total actual value of the yacht as an entity. It is,

in our opinion, too strained an interpretation to construe it in the light of application of paragraph 1615, supra, as meaning the appraised value of goods of foreign origin only. True identifiable goods of American origin have been constructively separated from the rest of the yacht for purposes of separately appraising them in order to avail appellant of duty exemptions under paragraph 1615(a), supra. But this is only a legal fiction. These goods have been integrated with the goods of foreign origin and comprise an essential part of the yacht and certainly form a part of the actual value of the yacht.

It seems to us that when the collector constructively separated from the rest of the yacht those parts which could be identified as goods of American origin and admitted them duty free, appellant received all the exemption he was entitled to under authority of the cases considered by us * * *. [Italics quoted.]

and at page 13, the appellate court in the *Parrot* case, in affirming the decision of the Customs Court overruling appellant's protest, stated:

* * * In our opinion, the final appraised value of this case is the appraised value of the yacht as an entity. This is clearly the sum of the appraised values of goods of American and foreign origin respectively. Although the appraiser in this report on Customs Form 6431 listed the two items separately, we think the proper significance to be attached to this is that the report was made in this manner to more clearly present to the collector the pertinent information which the former is obliged to furnish the latter in compliance with the provisions of section 500(a) of the Tariff Act of 1930. Appellant, by his arguments, in effect urges us to hold that there was no final appraised value of the yacht as a whole, on which the collector could properly base his decision, simply because the appraiser did not go through the mechanics of totaling

the separate values on form 6431. It is our opinion that to do this would be to ignore the substance of the facts and hinge outcome of the case on a formal technicality which we think is insignificant in this particular case. Moreover, looking to the *pro forma* entry, set out in part, supra, we find that one of the values approved by the appraiser herein is a:

>55 foot aux. schooner Yacht
>Keewatin—$17,000

In our opinion, rather than supporting appellant's above-noted contentions, as he claims, this latter form is more logically interpreted as an indication by the appraiser that the value of the yacht as a whole or entity is $17,000.

█ The *Donald G. Parrot* case, supra, supports, in our opinion, a finding that what was properly subject to appraisement in the case at bar were the complete baling presses comprised of the superstructures of foreign origin and the power units of American origin as an entirety as found by the appraiser in appraising the imported merchandise and we so hold.

It may be noted in passing that the holdings of the court in the *Border Brokerage Company, Consolidated Sewing Machine Co.*, and the *Donald G. Parrot* cases, supra, to which our attention has been directed in the present action and upon which we mainly predicate our present determination that the merchandise here subject to appraisement consists of the involved superstructures complete with the American-made power units as an entirety, were not called to the attention of the court at the trial below or thereafter in the respective briefs of the parties.

In view of our determination as above noted, we are constrained to reverse the judgment of the lower court and hereby remand the case to the single judge for the purpose of finding a value for the imported baling presses, that is, the superstructures complete with the American-made power units as an entirety.

Judgment will be rendered accordingly.