**UNITED STATES of America, Plaintiff,**

v.

**NATIONAL ASSOCIATION OF BROADCASTERS, Defendant.**

**Civ. A. No. 79–1549.**

United States District Court, District of Columbia.

Nov. 23, 1982.

William Simon, Keith E. Pugh, Jr., Edward P. Henneberry, Howrey & Simon, Washington, D.C., for plaintiff.

John V. Thomas, Gordon G. Stoner, John Dorsey, Antitrust Div., U.S. Dept. of Justice, Washington, D.C., for defendant.

## MEMORANDUM

HAROLD H. GREENE, District Judge.

In this proceeding under the Tunney Act, 15 U.S.C. § 16(b)–(h), the Court must determine whether the entry of a consent decree, terminating an antitrust action brought by the United States, is in the public interest.

The government's complaint, filed July 14, 1979, alleged that the National Association of Broadcasters (NAB) violated Section 1 of the Sherman Act, 15 U.S.C. § 1, by its adoption and enforcement of certain Advertising Standards that regulated television advertising. The advertising provisions were part of NAB's Television Code, subscribed to by most of the nation's commercial television stations.[1] After the filing of the complaint, both parties moved for summary judgment. On March 3, 1982, on the basis of the parties' written submissions and after oral argument, the Court found one of the three sets of Advertising Standards challenged by the government to be unlawful *per se*. These provisions restricted the number of products an advertiser could promote in a commercial lasting over sixty seconds.[2] The validity of the remaining provisions, which limited the duration and frequency of commercial interruptions, was to be determined after trial.[3] NAB appealed the Court's decision to the Court of Appeals.

Thereafter, on July 16, 1982, while the appeal was pending, the parties submitted a proposed consent decree which, for present purposes, may be summarized as containing two principal provisions. First, NAB agrees to stop disseminating or enforcing all of the three questioned Advertising Standards. Second, the government promises not to object to an order from the Court of Appeals dismissing as moot and vacating this Court's order of March 3 adjudging NAB to be in violation of the Sherman Act.

◼ In accordance with the Tunney Act, the purpose of which is to restrain the injudicious use of consent decrees in government-initiated antitrust cases, the government filed a competitive impact statement, and it received and filed with the Court public comments concerning the proposed decree.[4] In passing on the question whether the decree is in the public interest, two substantive issues deserve discussion.

1. See the opinion filed by the Court on March 3, 1982, 536 F.Supp. 149.

2. This set of restrictions artificially increased the demand for commercial time and unfairly favored concerns with larger advertising budgets over those with smaller ones. See the opinion of March 3, 1982, 536 F.Supp. 149, Part V.

3. These provisions limit the number of minutes per hour that may be allocated to commercials and the number of different commercials that may be broadcast each hour. See the opinion of March 3, 1982, Parts II, III, IV, 536 F.Supp. 149.

4. The government also published the comments and its responses to them in the Federal Register, as required by the Tunney Act, and on November 5, 1982, it filed a statement of compliance with all other Tunney Act requirements.

## I

■ Under Section 5(a) of the Clayton Act, 15 U.S.C. § 16(a), a final judgment rendered on behalf of the United States in a civil antitrust case becomes *prima facie* evidence against the defendant in any subsequent private action that might be brought against that defendant. The consent decree proposed in this case would deprive private parties of *prima facie* evidence in two conceivable ways. First, the termination of this action through settlement precludes a trial and possible judgment in favor of the government on the two sets of Advertising Standards reserved for trial by this Court's summary judgment ruling. Second, the settlement encourages nullification of the Court's order holding the multiple product restrictions in violation of the Sherman Act because, as indicated *supra,* it is part of the settlement agreement that NAB would seek, and the government would not oppose, the vacating of that order. After fully considering the matter, the Court has decided that these aspects of the settlement do not contravene the public interest.

■ The purpose of § 5(a) is to contribute to the deterrent effect of the antitrust laws by "upping the stakes" that may follow from anticompetitive practices. At the same time, private parties are aided by being able to take advantage of the government's special capacity for handling large and complex antitrust cases. See, *e.g., Emich Motors Corp. v. General Motors Corp.,* 340 U.S. 558, 71 S.Ct. 408, 95 L.Ed. 534 (1951). Yet the "piggyback" use that

private parties may make of prior antitrust judgments is modified by an exception for consent decrees entered "before any testimony has been taken." 15 U.S.C. § 16(a).

Congress apparently enacted this proviso in order to encourage defendants to settle promptly government-initiated antitrust claims and thereby to save the government the time and expense of further litigation. See, *e.g., Fleer Corp. v. Topps Chewing Gum, Inc.,* 415 F.Supp. 176, 184 (E.D.Pa. 1976); *Michigan v. Morton Salt,* 259 F.Supp. 35, 59 (D.Minn.1966); *Homewood Theatre v. Loew's, Inc.,* 110 F.Supp. 398, 410–11 (D.Minn.1952); *Deluxe Theatre Corp. v. Balatan & Katz Corp.,* 95 F.Supp. 983, 986 (N.D.Ill.1951).

This legislative policy favoring consent decrees is especially furthered by the circumstances that obtain in this case. As to the two sets of provisions reserved for trial, the terms of the decree provide virtually the same relief that the government could have hoped to achieve had it succeeded at trial—yet the uncertainty, delay, and expense of a trial would be avoided. Moreover, no individual or enterprise has commented adversely with respect to the ramifications the decree may have for future private plaintiffs.

Finally, if the provision regarding vacating would be deemed unacceptable by this Court as negating the *prima facie* evidence effect of its earlier order—by subsuming it within the exception to the *prima facie* evidence rule for consent decrees "entered before any testimony was taken" [5]—this

---

**5.** The circumstances of this case raise an interesting and apparently novel question regarding the interpretation of § 5(a). The consent decree exception to the *prima facie* evidence rule extends only to decrees "entered before any testimony was taken." 15 U.S.C. § 16(a). No oral testimony was taken prior to entry of the Court's summary judgment ruling of March 3, 1982, 536 F.Supp. 149; the finding of a Sherman Act violation was based on affidavits, written exhibits, and oral argument. Thus, if "testimony" is given its customary meaning of oral statements, subject to cross-examination and made under oath, the consent decree proposed in this case, if approved, would fall within the exception. The purpose behind the con-

sent decree exception, however, is to induce prompt capitulation by antitrust defendants. Thus, if Congress intended "testimony" to be a proxy for the active pursuit of litigation, it is not altogether clear that the defendant here, having capitulated only after a summary judgment motion and decision, should get the same benefit as defendants who spare the government the burden of any litigation activity beyond the filing of a complaint. The question need not be determined in this case, but it may be decided if and when a private plaintiff offers the decree as *prima facie* evidence in a subsequent lawsuit against NAB. It is worth observing, however, that if the decree falls within the exception, as it probably does, the Court's sum-

would be a hollow gesture. Approval of the decree without this element would be unlikely to yield a different result because under the authority of *United States v. Munsingwear*, 340 U.S. 36, 39–40, 71 S.Ct. 104, 106–07, 95 L.Ed. 36 (1950), the Court of Appeals could be expected to dismiss for mootness and vacate the Court's order on its own initiative in any event. To the extent, then, that the decree is premised upon NAB's expectation that the government's acquiescence makes vacating certain, the Court would not be justified in jeopardizing an outcome that implements Congress's preference for consent decrees in order to vindicate the speculative interests of hypothetical private plaintiffs.[6]

## II

Action for Children's Television (ACT) has submitted comments recommending that the proposed judgment be revised to permit the continued enforcement of the NAB Code provisions that relate to children's advertising. It is ACT's view that

the Court should disapprove the proposed judgment insofar as it invalidates those provisions of the Code that limit the number of commercial minutes for children's television and that regulate multiple products advertised in a single commercial.[7]

The Court is certainly sympathetic to ACT's purpose to shield impressionable children from excessive advertising. But the question here does not concern the desirability in the abstract of such a purpose but whether the providers of commercial time (*i.e.,* the networks and individual stations) may band together artificially to limit the supply of their product or to increase the demand therefor in apparent violation of the antitrust laws. As the Court pointed out in its opinion of March 3, 1982, the Supreme Court has made it crystal clear that in areas where the antitrust laws operate, they constitute the congressional determination of the public interest, and lower courts are not free to substitute some other interests or purposes, no matter how worthwhile,[8] for the basic Sherman Act charter.[9]

mary judgment order—even if not vacated—would most likely be inadmissible as well. Were it otherwise, a party would accomplish through the back door what could not be done through the front door except by contravening the congressional mandate contained in the § 5(a) consent decree exception and elaborated upon in the Tunney Act. Thus, given the circumstances of this case, it seems that the only way to ensure that private parties could make use of the Court's March 3 order would be to disapprove the consent decree altogether and force the government to go to trial. That would certainly be contrary to the public interest.

**6.** The interests are speculative also because the estoppel effect of the Court's summary judgment ruling is uncertain, and the *prima facie* evidence rule is governed by principles of estoppel. See 15 U.S.C. § 16(a). The plaintiffs are hypothetical because none surfaced during the 60-day comment period.

**7.** ACT is also concerned about a provision in the Code that requires a clear separation between program and non-program material. That provision, however, is not involved in the instant lawsuit nor is it directly affected by the proposed judgment.

**8.** If particular industries or practices are to be relieved from the mandate of the antitrust laws for social, political, or public interest reasons,

the exemption must come from the Congress, not the courts. The Congress has, of course, granted such exemption in a number of instances (*e.g.,* insurance, baseball) but not here. Moreover, there is no necessary conflict between competition and the goal of protecting children from excessive commercial advertising. As indicated below, nothing in the proposed consent decree restricts the ability of television stations, each acting on its own, or under pressure from organizations such as ACT, to implement advertising policies that seek to balance program and nonprogram material in a reasonable and responsible manner. Moreover, there is no evidence that while the challenged Advertising Standards were in effect the full amount of time that could be used commercially was so used by each and every subscribing station. Even when the standards were extant, stations and advertisers understood that the public can become sated with commercials. Competition to deliver the most attractive television package can be expected to continue to foster such *individual* restraint once NAB's *collective* restraints are lifted.

**9.** It is true that when more than one remedy is available to ameliorate an anticompetitive practice a court must adopt the remedy that least impinges upon other public policies. When only one form of relief will be effective, however, that relief must be imposed regard-

See *National Society of Professional Engineers v. United States,* 435 U.S. 679, 98 S.Ct. 1355, 55 L.Ed.2d 637 (1978). That principle applies especially in the present situation where the Court is being asked by ACT, in effect, to refuse to approve a negotiated settlement providing for full and complete antitrust relief on the basis of wholly non-antitrust considerations.

■■■ This does not mean, of course, that ACT is without a remedy or that the principles it advocates may not be vindicated. As the Department of Justice has correctly pointed out, individual stations remain free to curtail and regulate children's advertising in a responsible manner, and ACT remains free to urge stations to do just that. Beyond that, the Federal Communications Commission would appear to have the authority to deal with this subject and, as ACT has noted, the FCC has already shown a considerable interest in these matters.[10] But the Court is not empowered to disregard the specific mandate of the antitrust laws when passing upon a settlement submitted by both parties.

The Court finds the proposed decree to be in the public interest, and it has accordingly entered the decree proffered by the parties.

### FINAL JUDGMENT

Plaintiff, the United States of America, having filed its Complaint herein on June 14, 1979, and Plaintiff and Defendant, National Association of Broadcasters, by their respective attorneys, having each consented to the entry of this Final Judgment, and without this Final Judgment constituting evidence against or admission by Defendant or Plaintiff with respect to any issue of fact or law herein;

NOW, THEREFORE, before the taking of any testimony, and without trial or any final adjudication of any issue of fact or law herein, and upon the consent of the parties, it is hereby

ORDERED, ADJUDGED, AND DECREED as follows:

#### I.

This Court has jurisdiction over the subject matter of this action and the parties. The Complaint states a claim upon which relief may be granted against Defendant under Section 1 of the Sherman Act (15 U.S.C. § 1).

#### II.

As used in this Final Judgment:

"NAB" means the defendant National Association of Broadcasters.

"NAB Television Code" or "Television Code" means the Television Code of the NAB.

"Non-program material" includes, but is not limited to, commercials, promotional announcements, billboards, public service announcements and credits.

"Code subscribers" includes all persons who have subscribed to or agreed to be bound by the provisions of the Television Code.

"Person" means any individual, partnership, firm, association, corporation, or other business or legal entity.

#### III.

This Final Judgment shall apply to Defendant, its subsidiaries and affiliates (including without limitation the Code Authority of the NAB) and to Defendant's officers, directors, agents, employees, successors, and assigns, and to all other persons in active concert or participation with any of

less of its impact on other interests. See *United States v. American Telephone and Telegraph Co.,* 552 F.Supp. 131 at 150 & n. 82. No. 82–0192 (D.D.C. August 11, 1982), at 30 and n. 82. In this case, only nullification of the collective advertising restrictions will remedy the anticompetitive effects they caused.

**10.** No purpose would be served by having the Court refer this matter to the FCC for its opinion. The Court is charged under the Tunney Act with making its judgment concerning the public interest regarding the settlement of this lawsuit and, for the reasons outlined above, the FCC's opinion could not overcome the force of the antitrust laws and the court decisions interpreting those laws.

them who shall have received actual notice of this Final Judgment by personal service or otherwise. For purposes of this Section III, members of Defendant NAB shall not be deemed to be in active concert or participation with NAB solely by virtue of their membership in NAB.

## IV.

Defendant shall immediately cancel and is enjoined from maintaining, promulgating, publishing, distributing, enforcing, monitoring or otherwise requiring or suggesting adherence to Section IX, paragraph 5; Section XIV, paragraphs 1 through 5; and Section XV of the Television Code (twenty-second edition).

## V.

Defendant is enjoined and restrained from, directly or indirectly, and either unilaterally or in concert with any other person, adopting, maintaining, promulgating, publishing, distributing, enforcing, monitoring or otherwise requiring or suggesting adherence to, any code, rule, by-law, guideline, standard or other provision limiting or restricting:

(1) the quantity, length or placement of non-program material appearing on broadcast television; or

(2) the number of products or services presented within a single non-program announcement on broadcast television.

Provided, however, that nothing in this Final Judgment shall prohibit:

A. Members of Defendant NAB (including commonly-owned members acting together), from individually and unilaterally adhering to, adopting, instituting or maintaining such policies, practices or limitations with respect to the quantity, length, or placement of non-program material, or the number of products or services presented within a single non-program announcement, as each such member may independently deem appropriate.

B. Defendant NAB and its members from exercising their First Amendment rights of:

(1) jointly advocating, proposing, opposing or discussing with each other legislation concerning any policies, practices or limitations with respect to the quantity, length, or placement of non-program material, or the number of products or services presented within a single non-program announcement;

(2) jointly advocating, proposing, opposing or discussing any rule, regulation, or policy to any federal or state executive or administrative agency or department; or

(3) jointly participating in any proceeding before any such agency or department, concerning such policies, practices or limitations.

## VI.

Defendant NAB is ordered:

A. Within thirty days of the date of entry of this Final Judgment to send a copy of this Final Judgment to all NAB members and all Television Code subscribers; and

B. To file with this Court and serve upon Plaintiff an affidavit as to the fact and manner of compliance with subparagraph A of this paragraph. Such affidavit is to be served and filed with the Clerk of the Court within forty-five days of the date of entry of this Final Judgment.

## VII.

For the purpose of determining or securing compliance with this Final Judgment, and subject to any legally recognized privilege, from time to time:

A. Duly authorized representatives of the Department of Justice shall, upon written request of the Attorney General or of the Assistant Attorney General in charge of the Antitrust Division, and on reasonable notice to Defendant made to its principal office, be permitted:

(1) Access during office hours to inspect and copy all books, ledgers, accounts, correspondence, memoranda, and other records and documents in the possession or under the control of Defendant, who may have counsel present,

regarding any matters relevant to this Final Judgment; and

(2) Subject to the reasonable convenience of such Defendant and without restraint or interference from it, to interview officers, employees and agents of such Defendant, who may have counsel present, regarding any such matters.

B. Upon the written request of the Attorney General or of the Assistant Attorney General in charge of the Antitrust Division made to Defendant's principal office, Defendant shall submit such written reports, under oath if requested, with respect to any of the matters contained in this Final Judgment as may be requested.

C. No information or documents obtained by means provided in this Section shall be divulged by any representative of the Department of Justice to any person other than a duly authorized employee or representative of the Executive Branch of the United States, except in the course of legal proceedings to which the United States is a party, or for the purpose of securing compliance with this Final Judgment, or as otherwise required by law.

#### VIII.

The Final Judgment shall remain in effect until ten (10) years from the date of entry.

#### IX.

Jurisdiction is retained by this Court for the purpose of enabling any of the parties to this Final Judgment to apply to this Court at any time for further orders or directions as may be necessary or appropriate for the construction or carrying out of this Final Judgment, for the modification of any of its provisions, for its enforcement or compliance, and for the punishment of any violation of its provisions.

#### X.

Entry of this Final Judgment is in the public interest.