SOUTHERN PACIFIC COMMUNICATIONS COMPANY, et al.,
Appellants,

v.

AMERICAN TELEPHONE & TELEGRAPH COMPANY, et al.

No. 83–1864.

United States Court of Appeals,
District of Columbia Circuit.

Argued March 20, 1984.
Decided July 31, 1984.

George L. Saunders, Jr., Washington, D.C., with whom Michael S. Yauch, C. John Buresh, Stewart A. Block, Washington, D.C., Howard J. Trienens, New York City, and Raymond Brenner, Washington, D.C., were on the brief, for appellees. Julie D. Nelson, Washington, D.C., also entered an appearance for appellees.

Frederick P. Furth, San Francisco, Cal., with whom Thomas R. Fahrner, Daniel S. Mason, Charles P. Wolff, Michael P. Lehmann, Craig C. Corbitt, San Francisco, Cal., Stephen Ailes, Richard A. Whiting, Richard Diamond and James H. Pipkin, Washington, D.C., were on the brief, for appellants. Edmund W. Burke, Washington, D.C., also entered an appearance for appellants.

Before WALD and EDWARDS, Circuit Judges, and SWYGERT,[*] Senior Circuit

* Sitting by designation pursuant to 28 U.S.C. § 294(d) (1982).

**1014**

Judge, United States Court of Appeals for the Seventh Circuit.

Opinion for the Court filed by Senior Circuit Judge SWYGERT.

SWYGERT, Senior Circuit Judge:

This appeal arises out of an antitrust action brought by Southern Pacific Communications Company and Transportation Microwave Corporation ("SPCC") against American Telephone and Telegraph Company and the local Bell Operating Companies ("AT & T"). Following a bench trial, the district court entered judgment for AT & T and this court affirmed. *SPCC v. AT & T*, 556 F.Supp. 825 (D.D.C.1982), *aff'd*, 740 F.2d 980 (D.C.Cir. 1984). Prior to our affirmance, SPCC had moved the district court, pursuant to Fed.R.Civ.P. 60(b)(6),[1] to vacate the judgment. The motion was denied. *SPCC v. AT & T*, 567 F.Supp. 326 (D.D.C.1983). We now affirm the district court's denial of SPCC's Rule 60(b) motion to vacate.

### I

The facts of the antitrust action underlying this appeal are fully set forth in *SPCC v. AT & T*, 740 F.2d 980 at 984–987, *supra*. We will discuss only the additional facts relevant to SPCC's Rule 60(b) motion.

---

**1.** Fed.R.Civ.P. 60(b)(6) provides:

On motion and upon such terms as are just, the court may relieve a party or his legal representative from a final judgment, order, or proceeding for ... any ... reason justifying relief from the operation of the judgment.

**2.** In *Parklane Hosiery Co. v. Shore*, 439 U.S. 322, 331, 99 S.Ct. 645, 651, 58 L.Ed.2d 552 (1979), the Supreme Court held that a plaintiff may, when appropriate, preclude a defendant from relitigating issues that the defendant litigated and lost against another plaintiff. This practice, which SPCC seeks to use in this case, is called offensive collateral estoppel. Offensive use of collateral estoppel is distinguished from defensive use of collateral estoppel. The latter occurs when a defendant seeks to preclude a plaintiff from relitigating an issue that the plaintiff has litigated and lost against another defendant. *See id.* at 326 n. 4, 99 S.Ct. at 649 n. 4. Although offensive and defensive collateral estoppel are

### 1. *SPCC's Rule 60(b) Motion*

The district court issued a Memorandum Opinion and Order entering judgment for AT & T and dismissing the case with prejudice on December 21, 1982. In February 1983 SPCC moved the district court, pursuant to Fed.R.Civ.P. 60(b)(6), to vacate the judgment in light of judgments in two other antitrust actions against AT & T, *MCI Communications Corp. v. AT & T*, No. 74–C–633 (N.D.Ill.1980), *aff'd in part and rev'd in part*, 708 F.2d 1081 (7th Cir.), *cert. denied*, —— U.S. ——, 104 S.Ct. 234, 78 L.Ed.2d 226 (1983) ("the *MCI* case"); and *United States v. AT & T*, 552 F.Supp. 131 (D.D.C.1982), *aff'd summarily sub nom. Maryland v. United States*, 460 U.S. 1001, 103 S.Ct. 1240, 75 L.Ed.2d 472 (1983).

SPCC claims that the jury verdict in the *MCI* case precludes relitigation by AT & T of five factual issues.[2] The first issue is the definition of the relevant market.[3] The other four issues are whether AT & T willfully maintained its monopoly power by: (1) negotiating interconnection contracts in bad faith and then abandoning the contract process in bad faith to file tariffs with state regulatory commissions;[4] (2) improperly denying FX and CCSA interconnections;[5] (3) providing inappropriate or ineffective equipment and procedures for interconnection;[6] and (4) refusing to

---

quite similar, the former raises certain considerations that are not raised by the latter. *See id.* at 329–31, 99 S.Ct. at 650–51.

**3.** The relevant market is the market in which an entity's power is measured to determine whether the entity is a monopolist for antitrust law purposes. The relevant market is generally defined in both geographic and product terms. *See United States v. E.I. duPont De Nemours & Co.*, 351 U.S. 377, 394–96, 76 S.Ct. 994, 1006–07, 100 L.Ed. 1264 (1956); L. Sullivan, *Handbook of the Law of Antitrust* 41–74 (1977). For a discussion of SPCC's claim, *see SPCC v. AT & T, supra*, at 997–998.

**4.** For a discussion of this claim, *see SPCC v. AT & T, supra*, at 1004–1005.

**5.** *See id.* at 1014 n. 3, 1004.

**6.** *See id.* at 1004–1005.

provide interconnections outside strictly limited geographical areas.

SPCC also claims that the judgment in *United States v. AT & T, supra,* 552 F.Supp. 131, together with the court's denial in that case of AT & T's motion to dismiss the government's suit, *United States v. AT & T,* 524 F.Supp. 1336 (D.D.C. 1981), conclusively establish that AT & T monopolized the relevant market of intercity telecommunications service in violation of section 2 of the Sherman Act by: (1) refusing to provide FX and CCSA interconnections; (2) providing inappropriate or inefficient equipment and procedures for interconnection; (3) pricing access to local distribution facilities in a discriminatory manner;[7] (4) negotiating interconnection contracts and then filing tariffs with state regulatory commissions in bad faith; and (5) pricing Telpak and Hi/Lo without regard to cost.[8] According to SPCC, AT & T is precluded from relitigating these issues under section 5(a) of the Clayton Act, which provides:

> A final judgment or decree ... rendered in any ... proceeding brought by ... the United States under the antitrust laws to the effect that a defendant has violated said laws shall be prima facie evidence against such defendant in any action or proceeding brought by any other party against such defendant under said laws as to all matters respecting which said judgment or decree would be an estoppel as between the parties thereto: *Provided,* That this section shall not apply to consent judgments or decrees entered before any testimony has been taken. Nothing contained in this section shall be construed to impose any limitation on the application of collateral estoppel....

15 U.S.C. § 16(a) (1982).

### 2. The MCI Case

In 1974 MCI filed a complaint against AT & T in the United States District Court for the Northern District of Illinois under section 4 of the Clayton Act, 15 U.S.C. § 15 (1982), alleging monopolization and conspiracy in restraint of trade. The case was tried to a jury between February and June 1980. Fifteen of MCI's monopolization charges were ultimately submitted to the jury which was instructed to make a separate finding of liability as to each charge but permitted to award damages in a lump sum. The jury found in favor of MCI on ten of the fifteen charges and awarded MCI $600 million in damages. After losing various posttrial motions, AT & T filed notice of appeal in August 1980. In September 1980 MCI filed notice of cross-appeal. On January 12, 1983 the United States Court of Appeals for the Seventh Circuit issued its opinion sustaining in part and reversing in part the jury verdict and remanding the case for a new trial on the issue of damages. *MCI v. AT & T,* 708 F.2d 1081 (7th Cir.), *cert. denied,* — U.S. ——, 104 S.Ct. 234, 78 L.Ed.2d 226 (1983).

SPCC filed its complaint against AT & T on March 27, 1978. In February 1982 SPCC made a motion *in limine* for an order defining legal issues under section 2 of the Sherman Act. In one of its briefs filed in connection with the motion, SPCC argued that the jury verdict in the *MCI* case precluded AT & T from relitigating the issue of the relevant market. Plaintiffs' Reply Memorandum on Section 2 of the Sherman Act, at 2–3 (filed Feb. 17, 1982). This issue, among others, was referred to two Special Masters. On April 22, 1982 the Special Masters ruled:

> [I]n *MCI v. AT & T* a finding of fact was made by the jury as to the relevant market. The finding was in response to a charge to the jury reciting that MCI contended the relevant market was "intercity business and data communication services in the United States during the period from 1969 through mid-1974," consisting of "private line services, and other services which can be used instead of private line services, such as WATS and business long distance." That finding is the basis of a judgment now on appeal.

---

7. *See id.* at 1005.

8. *See id.* at 1014 n. 5, 1000.

If that finding is not reversed on appeal, it may be relied on by SPCC.

The issue is obviously substantially the same, and should be treated as such unless AT & T can suggest some reason why it should not be regarded as the same issue. On the premise that it is the same issue, the finding is preclusive against AT & T, *Parklane Hosiery Co. v. Shore*, 439 U.S. 322 [99 S.Ct. 645, 58 L.Ed.2d 552] (1979), unless AT & T can show "compelling circumstances" permitting it to relitigate this issue.... If the finding in *MCI v. AT & T* is reversed, or compelling reasons are shown why the finding should not be preclusive here, then the definition of the market in this case is a question of fact to be determined afresh according to accepted antitrust legal standards.

Opinion of the Special Masters at 5–6 (filed Apr. 22, 1982) (hereinafter "Special Masters' April 22 opinion").

AT & T appealed the Special Masters' April 22 Opinion and, in response, SPCC filed a motion to adopt the Opinion with modifications, Plaintiffs' Motion to Adopt, with Modifications, the Special Masters' April 22 Opinion, at 7–9 (filed May 3, 1982). The district court deferred consideration of the appeal pending trial. Order Holding in Abeyance Special Masters' 4–22–82 Opinion (May 6, 1982). Trial in the case commenced on May 10, 1982 and lasted for more than thirty days. In July 1982 SPCC filed proposed conclusions of law, in which SPCC proposed that AT & T be estopped from challenging the definition of the relevant market adopted by the jury in the *MCI* case. Plaintiffs' Proposed Findings of Fact and Conclusions of Law, at 355 (filed July 21, 1982). On December 21, 1982 the district court issued a Memorandum Opinion and Order entering judgment for AT & T. Without reference to the Special Masters' April 22 Opinion, the court defined the relevant market as interstate, intercity private line services to customers other than the federal government. *SPCC v. AT & T, supra*, 556 F.Supp. at 871–77.

### 3. *The Government Case, United States v. AT & T*

In 1949 the United States filed an antitrust action against Western Electric Company and AT & T in the United States District Court for the District of New Jersey. *United States v. Western Electric Co.*, 531 F.Supp. 894 (D.N.J.1981). The action resulted in a consent decree entered in 1956. *United States v. Western Electric Co.*, 1956 Trade Cas. (CCH) ¶ 68,246 (D.N.J.1956) (Final Judgment). The 1956 decree limited the business that defendants could engage in but did not direct any divestiture or other structural relief originally sought by the government. In 1974 the United States filed a second antitrust action against AT & T, Western Electric Company, and Bell Telephone Laboratories in the United States District Court for the District of Columbia. Trial commenced in the action in January 1981. After the conclusion of the government's case-in-chief, the defendants moved to dismiss the action on a number of grounds. The motion was denied by the court on September 11, 1981. *United States v. AT & T, supra*, 524 F.Supp. 1336. Defendants commenced their case-in-chief in August 1981 and were scheduled to complete the presentation of their evidence in January 1982. The trial was scheduled to terminate in February after presentation of the government's rebuttal evidence. However, on January 8, 1982 the parties filed a stipulation with the United States District Court for the District of New Jersey agreeing to entry of a consent decree. The decree purported to be a modification of the 1956 judgment and was designated "Modification of Final Judgment" ("MFJ"). Simultaneously with the filing in the New Jersey court, the parties sought to enter the MFJ as a settlement of the action in the United States District Court for the District of Columbia and to file a dismissal of the action. The District of Columbia court, however, ordered that the dismissal be reviewed and approved by the court. The actions were consolidated in the District of Columbia court. The court determined that any settlement was subject to the provisions of the

Tunney Act, 15 U.S.C. § 16 (1982), which requires compliance with specified procedures before entering a consent judgment in an action brought by the United States under the antitrust laws. After adhering to the Tunney Act procedures, including making a finding that the judgment was in the public interest, the court entered the MFJ with certain modifications in August 1982. *United States v. AT & T, supra,* 552 F.Supp. 131.

The MFJ as modified by the court required the defendants to divest themselves of their local operating companies. *Id.* at 226–27. The MFJ provides: "Neither this Modification of Final Judgment nor any of its terms or provisions shall constitute any evidence against, an admission by, or an estoppel against any party or BOC." *Id.* at 228. In its opinion approving the MFJ, the court discussed the applicability of section 5(a) of the Clayton Act, 15 U.S.C. § 16(a) (1982): "[T]he statute establishes a presumption usable in private litigation only on the basis of a judgment 'to the effect that a defendant has violated the antitrust laws.'" 552 F.Supp. at 211. The court noted that neither its opinion nor the MFJ included a finding or an admission that AT & T violated the antitrust laws. In view of the MFJ's "unequivocal position" that it did not constitute evidence or an estoppel against or an admission by any party, the court stated, "it would appear to this Court that the judgment herein would not have a prima facie effect in private litigation." The court, however, following the suggestion of the Department of Justice, declined to make a final decision on the applicability of section 5(a). The court stated that the ultimate decision whether to apply section 5(a) to the MFJ in future private antitrust actions rests with the courts in which the actions are brought. *Id.*

### 4. *The District Court Decision*

In a written opinion and order issued on July 7, 1983 the district court denied SPCC's Rule 60(b) motion. *SPCC v. AT & T, supra,* 567 F.Supp. 326. The court found that SPCC had waived its collateral estoppel claims with respect to the *MCI* case. *Id.* at 329–30. With respect to the denial of AT & T's motion to dismiss the government's case, the court found that the ruling was not a final resolution of the issues involved and thus could not be the basis of a collateral estoppel claim. *Id.* at 328. The court refused to give collateral estoppel effect to the MFJ because the MFJ specifically provided that it should not be given such effect. *Id.* The court found that section 5(a) of the Clayton Act was inapplicable because the consent decree "did not constitute a judgment to the effect that AT & T violated the antitrust laws." *Id.* at 329. Finally, the court held that even if the MFJ could be understood to contain a finding that AT & T violated the antitrust laws, section 5(a) provided only that it be admitted as prima facie evidence against AT & T. The court concluded that the outcome of the litigation would have been the same if the MFJ had been admitted against AT & T because evidence submitted by AT & T successfully rebutted any prima facie effect of the MFJ. *Id.*

## II

■ Fed.R.Civ.P. 60(b)(6) provides a district court discretion to grant relief from a judgment for any reason justifying relief. *See SEC v. Clifton,* 700 F.2d 744, 746 (D.C.Cir.1983). In the instant case, SPCC requested, pursuant to Rule 60(b)(6), that the district court vacate its findings and apply offensive collateral estoppel to findings contained in two other judgments against AT & T. In *Parklane Hosiery Co. v. Shore, supra,* the Supreme Court concluded that "the preferable approach for dealing" with the offensive use of collateral estoppel was "not to preclude" its use in the federal courts, "but to grant trial courts broad discretion to determine when it should be applied." 439 U.S. at 331. Thus, in reviewing the propriety of the district court's determinations both to deny Rule 60(b)(6) relief and to deny offensive use of collateral estoppel, this court is bound by the abuse of discretion standard.

### III

#### 1. *Waiver*

■ The district court found that SPCC waived its collateral estoppel claims with respect to the *MCI* case. *SPCC v. AT & T, supra*, 567 F.Supp. at 329–30. Although SPCC mentioned to the district court on more than one occasion that it might seek to preclude relitigation of certain issues determined adversely to AT & T in the *MCI* case, see, *e.g.*, Plaintiffs' First Statement of Contentions and Proof, at 2–3 (filed Nov. 24, 1980); Plaintiffs' Second Statement of Contentions and Proof, vol. 1, at 3 (filed Aug. 10, 1981), SPCC never moved to preclude any issues other than the issue of the relevant market and never even informed the court of the additional issues it was contemplating having precluded. We conclude that the court did not abuse its discretion in finding that SPCC waived these claims. *Cf. Grantham v. McGraw-Edison Co.*, 444 F.2d 210, 217 (7th Cir.1971) (per curiam) (Memorandum on Petition for Rehearing) ("A party normally may not rely on an estoppel which was available to him in the trial court but which was not raised prior to appeal.").

■ SPCC claims that it felt constrained by the Special Masters' April 22 Opinion to wait for the Seventh Circuit's decision to issue before seeking to preclude relitigation of the MCI jury findings. The Opinion stated that SPCC could rely on the jury finding as to the relevant market "[i]f that finding is not reversed on appeal...." We note that the federal rule and the rule in this circuit is that collateral estoppel may be applied to a trial court finding even while the judgment is pending on appeal. *See Huron Holding Corp. v. Lincoln Mine Operating Co.*, 312 U.S. 183, 189, 61 S.Ct. 513, 515, 85 L.Ed. 725 (1941); *Nixon v. Richey*, 513 F.2d 430, 438 n. 75 (D.C.Cir. 1975); 1B J. Moore, *Federal Practice* ¶ .416[3] (2d ed. 1983). Thus, SPCC should have been permitted to press its collateral estoppel claims at trial. Nevertheless, if the Special Masters' April 22 Opinion operated to bar SPCC from seeking the application of collateral estoppel until the Seventh

Circuit's decision issued, SPCC should not be held responsible for the misapplication of the law. SPCC was bound by the law of the case as formulated by the district court unless and until it was corrected on appeal after a final judgment. We conclude, however, that the Special Masters' April 22 Opinion did not prohibit SPCC from pursuing its collateral estoppel claims and, to the extent that SPCC believed the Opinion operated as such a bar, that belief was unreasonable.

First, the discussion of collateral estoppel in the Special Masters' Opinion is ambiguous. The reference to the pending appeal of the *MCI* jury verdict could be interpreted to mean that the appellate court's decision would be considered only if and when it issued; if the district court issued its decision on SPCC's complaint before the Seventh Circuit issued its decision in the *MCI* case, the district court would be required to give collateral estoppel effect to the jury verdict provided the propriety of giving such effect was established by SPCC; if, however, the Seventh Circuit issued its decision before the district court issued its decision, the district court obviously would be required to give collateral estoppel effect only to those findings upheld by the Seventh Circuit. Under this interpretation of the Special Masters' April 22 Opinion, an interpretation which comports with the federal rule, *see* 1B J. Moore, *Federal Practice, supra*, ¶ .416[3], SPCC remained free to pursue its collateral estoppel claims at trial.

The foregoing approach to collateral estoppel presents a potential dilemma for every litigant seeking to preclude litigation of certain issues on the basis of a prior judgment that is pending on appeal. If a litigant relies on the trial court judgment for proof of a contested issue and the judgment on that issue is reversed on appeal before judgment is rendered in the litigant's case, the litigant has no remaining proof on the issue. The remedy for this problem, however, is to permit the litigants to reopen their case after a reversal to present their evidence on the issue, or to

permit the litigants to submit independent proof on the issue at the same time they argue for the application of collateral estoppel. The remedy is not to refrain from raising collateral estoppel claims until the prior judgment has been affirmed on appeal. *See Grantham v. McGraw-Edison Co., supra,* 444 F.2d at 216–17 (party barred from raising estoppel for first time on appeal even though judgment relied upon for estoppel was pending on appeal during trial). More important than the ambiguity of the Special Masters' April 22 Opinion, however, the district court never adopted the Opinion. The court deferred consideration of the Opinion pending trial. Order filed May 6, 1982. Thus, whatever the Special Masters' April 22 Opinion held, SPCC was not bound by it.

▮▮ Collateral estoppel serves three main purposes. It protects litigants from the burden of relitigating an issue which the other party has already litigated and lost. *See Parklane Hosiery, supra,* 439 U.S. at 326, 99 S.Ct. at 649. It promotes judicial economy by preventing needless litigation.[9] *See id.* Finally, it "fosters reliance on judicial action by minimizing the possibility of inconsistent decisions." *Montana v. United States,* 440 U.S. 147, 154, 99 S.Ct. 970, 974, 59 L.Ed.2d 210 (1979). Although the application of collateral estoppel to the *MCI* judgment in the instant case arguably serves the purpose of consistency, it serves neither of the other purposes of the doctrine. The time and expense of relitigating the issues has already been borne by the parties and the court. At least when it is *possible* to raise collateral estoppel claims prior to trial, as it was here, we do not think that we unduly burden litigants by requiring them to raise the claims or to forego them forever. *See also Safe Flight Instrument Corp. v. McDon-*

*nell-Douglas Corp.,* 482 F.2d 1086, 1089 (9th Cir.), *cert. denied,* 414 U.S. 1113, 94 S.Ct. 843, 38 L.Ed.2d 740 (1973); *Grantham v. McGraw-Edison Co., supra,* 444 F.2d at 216–17; *Donald v. J.J. White Lumber Co.,* 68 F.2d 441, 442 (5th Cir.1934); *Carman Industries, Inc. v. Wahl,* 472 F.Supp. 877, 879 (D.N.J.1976) ("waiver has been found where a party has chosen to relitigate rather than assert the benefit of a prior adjudication of an issue in dispute").

Finally, we are concerned, as was the district court, *see SPCC v. AT & T, supra,* 567 F.Supp. at 330, that SPCC may have made a strategic decision to present its own evidence on the issues rather than to pursue possible collateral estoppel claims with respect to the *MCI* jury verdict. "Rule 60(b) cannot ... be employed simply to rescue a litigant from strategic choices that later turn out to be improvident." *Good Luck Nursing Home, Inc. v. Harris,* 636 F.2d 572, 577 (D.C.Cir.1980). *See also Ackermann v. United States,* 340 U.S. 193, 198, 71 S.Ct. 209, 211, 95 L.Ed. 207 (1950). SPCC's failure to even mention the findings which, if affirmed by the Seventh Circuit, it desired to have precluded suggests that SPCC was making a deliberate decision not to seek collateral estoppel of these issues. The earnestness of SPCC's claim that it felt constrained to wait for the appellate court's decision before it raised its collateral estoppel claims is further undermined by the fact that SPCC continued to seek to preclude relitigation of the jury finding on the relevant market even though the Seventh Circuit opinion affirming this finding had not yet issued. *See* Plaintiffs' Proposed Findings of Fact and Conclusions of Law, at 355 (filed July 21, 1982). If SPCC truly believed that collateral estoppel would be applied only after the Seventh

---

9. In *Parklane Hosiery, supra,* the Supreme Court recognized that offensive use of collateral estoppel could be employed in a manner that, in fact, promotes judicial *dis* economy. 439 U.S. at 329–30, 99 S.Ct. at 650–51. Offensive collateral estoppel may encourage plaintiffs to "wait and see" while other plaintiffs engage in test litigation against a common adversary because plaintiffs will never be bound by a previous judg-

ment against another plaintiff but, with offensive use of collateral estoppel, may rely on another plaintiff's favorable judgment. *See id.* Nevertheless, the promotion of judicial economy remains a goal of offensive collateral estoppel. The Court decided to leave to the district courts the task of protecting against abuse of the doctrine. *See id.* at 331, 99 S.Ct. at 651.

Circuit issued a decision, we do not understand why SPCC continued to seek to preclude relitigation of this one issue.

### 2. *Definition of the Relevant Market*

■ We are unable to conclude, however, that SPCC waived its collateral estoppel claim regarding the *MCI* jury finding on the relevant market. SPCC filed a motion *in limine* to preclude relitigation of the relevant market issue, filed a motion to adopt the opinion of the Special Masters which found collateral estoppel applicable to the *MCI* jury finding on the relevant market, and filed a proposed conclusion of law that AT & T be estopped from relitigating the relevant market issue.

■ We find, however, that error, if any, committed by the district court in failing to adopt the *MCI* jury verdict with respect to the definition of the relevant market is harmless. The definition of the relevant market has no independent significance under the Sherman Act. It relates only to the determination of whether a defendant possesses monopoly power. *See United States v. E.I. duPont De Nemours & Co., supra,* 351 U.S. at 394–95, 76 S.Ct. at 1006–07; L. Sullivan, *Handbook of the Law of Antitrust, supra,* at 41. In *SPCC v. AT & T, supra,* 998–999, this court rejected the analysis underlying the district court's conclusion that AT & T did not possess monopoly power. We affirmed the judgment of the district court solely on the basis that SPCC failed to prove AT & T's willful maintenance of its monopoly power. *Id.* at 999–1007. Because the definition of the relevant market is irrelevant to the analysis of willful maintenance of monopoly power, we need not determine the propriety of the district court's definition of the relevant market. *See* 28 U.S.C. § 2111 (1982).

### IV

■ Waiver has not been raised with respect to SPCC's collateral estoppel claims based upon the judgment entered in the government's suit against AT & T. The MFJ was approved by the district court in August 1982. *United States v. AT & T, supra,* 552 F.Supp. 131. Although the district court did not issue its Memorandum and Order in SPCC's action until December 1982, the trial, including the submission by the parties of their proposed findings of fact, was completed in July 1982. It is not argued and the district court did not find on this record that SPCC waived its estoppel claims based on the MFJ. Rather, the court refused to give any effect to the decision denying AT & T's motion to dismiss the government's action because the decision was not a final judgment on the merits. SPCC does not argue to this court, at least, that the denial of AT & T's motion to dismiss contained any findings entitled to either collateral estoppel or prima facie effect. *See* Appellant's Opening Brief, No. 83–1864 at 38. Therefore, we need not address this issue. The court refused to grant either collateral estoppel or prima facie effect to the MFJ because the language contained in the judgment expressly stated that it was not to have any such effect. We conclude that this decision was not an abuse of the court's discretion.

■ SPCC appears to try to root a collateral estoppel argument in the 1980 amendment to section 5(a) of the Clayton Act, 15 U.S.C. § 16(a). *See* Appellant's Opening Brief, No. 83–1864, at 42–43. The amendment provides: "Nothing in this section shall be construed to impose any limitation on the application of collateral estoppel...." Act of Sept. 12, 1980, Pub.L. 96–349, § 5(a), 94 Stat. 1157. We believe that the correct approach is to analyze collateral estoppel and section 5(a) separately. Collateral estoppel, under which a prior judgment operates as an absolute bar to relitigation of the issues estopped, is governed by common law principles. *See, Parklane Hosiery Co. v. Shore, supra,* 439 U.S. at 326–31, 99 S.Ct. at 649–51; 1B J. Moore, *Federal Practice, supra,* ¶ .441. Section 5(a) of the Clayton Act, in so far as it reflects a congressional determination that prior antitrust judgments shall have

carryover effect in subsequent litigations, limits the discretion of the courts to decide whether to give effect to a prior judgment. The section, however, accords prior judgments only prima facie effect, thus creating a rebuttable presumption with respect to those issues determined in the prior judgment. *See McCook v. Standard Oil Co. of California,* 393 F.Supp. 256, 259–60 (C.D.Cal.1975). Because the rules for and result of applying collateral estoppel and section 5(a) are different, we shall treat each in turn.

### 1. *Collateral Estoppel*

Some courts have given collateral estoppel effect to consent judgments. *But see Seaboard Air Line R.R. v. George F. McCourt Trucking, Inc.,* 277 F.2d 593, 597 (5th Cir.1960); *cf. United States v. International Building Co.,* 345 U.S. 502, 506, 73 S.Ct. 807, 809, 97 L.Ed. 1182 (1953) (unless a consent judgment entered in tax case is shown to involve a judicial determination of questions of fact and law, "the judgment has no greater dignity, so far as collateral estoppel is concerned, than any judgment entered only as a compromise of the parties"); *Otherson v. Department of Justice, I.N.S.,* 711 F.2d 267, 274 (D.C.Cir. 1983) ("Generally speaking, when a particular fact is established not by judicial resolution but by stipulation of the parties, that fact has not been 'actually litigated' and thus is not a proper candidate for issue preclusion."). The courts have allowed such effect only when "it is clear that the parties intended the stipulation of settlement and judgment entered thereon to adjudicate once and for all the issues raised in that action." *Yachts America, Inc. v. United States,* 673 F.2d 356, 362, 230 Ct.Cl. 26, *cert. denied,* 459 U.S. 839, 103 S.Ct. 86, 74 L.Ed.2d 81 (1982); *Green v. Ancora-Citronelle Corp.,* 577 F.2d 1380, 1383 (9th Cir.1978). *See generally* 1B J. Moore, *Federal Practice, supra,* ¶¶ .444[1], [3]. The consent decree must contain "far-reaching, preclusive language." *Yachts America,*

*Inc. v. United States, supra,* 673 F.2d at 362; *cf. Otherson v. Department of Justice, I.N.S., supra,* 711 F.2d at 274 n. 6 ("Preclusion is appropriate when the stipulation clearly manifests the parties' intent to be bound in future actions."); *Kaspar Wire Works, Inc. v. Leco Engineering & Machine, Inc.,* 575 F.2d 530, 539–40 (5th Cir.1978). The language contained in the MFJ was anything but far-reaching or preclusive. The judgment expressly stated that it did not constitute a finding of liability against AT & T and that it was to have no estopping effect. The district court did not abuse its discretion in respecting the express intent of the parties to the MFJ.

The district court's refusal to allow the use of collateral estoppel is further supported on the ground that it would be unfair to AT & T to give estopping effect to the MFJ. The MFJ settled a complicated antitrust action involving a fast-changing communications market. We will not pretend to be able to understand the various, complex considerations of the parties to the settlement. We recognize only that AT & T could have agreed to the settlement for a variety of reasons and not necessarily because AT & T was convinced that the government could establish an antitrust violation. *Cf. United States v. AT & T, supra,* 552 F.Supp. at 152 ("[T]he divestiture of the Operating Companies, combined with the entry of AT & T into new competitive markets, will be an enormous undertaking ... with a potential for substantial private advantage ...."). This is precisely the type of unfairness that the Supreme Court warned should result in a refusal to allow offensive use of collateral estoppel. *See Parklane Hosiery Co. v. Shore, supra,* 439 U.S. at 330–31, 99 S.Ct. at 651; *cf. United States v. International Building Co., supra,* 345 U.S. at 505–06, 73 S.Ct. at 808–09 ("As the case reaches us, we are unable to tell whether the [consent decree] was based on the merits or on some collateral consideration.... But unless we can say that [the judgments] were an adjudication of the merits, the doctrine of [collater-

al estoppel] would serve an unjust cause ....").

2. *Section 5(a)*

Section 5(a) of the Clayton Act, by its terms, applies to consent judgments entered after testimony has been taken. *See United States v. National Ass'n of Broadcasters*, 553 F.Supp. 621, 623 n. 5 (D.D.C.1982); *Michigan v. Morton Salt Co.*, 259 F.Supp. 35, 61 (D.Minn.1966) *aff'd sub nom. Hardy Salt Co. v. Illinois*, 377 F.2d 768 (8th Cir.), *cert. denied*, 389 U.S. 912, 88 S.Ct. 238, 19 L.Ed.2d 260 (1967); *Sablosky v. Paramount Film Distributing Corp.*, 137 F.Supp. 929, 935 (E.D.Pa. 1955). *But see Cinema Service Corp. v. Twentieth Century-Fox Film Corp.*, 477 F.Supp. 174, 178 (W.D.Pa.1979) (consent decree in government civil antitrust suit is not admissible in antitrust treble damage action). Although the judgment need not make a specific finding of liability, *see Michigan v. Morton Salt Co., supra*, 529 F.Supp. at 62, the judgment must be "to the effect that a defendant has violated the antitrust laws," *id.;* 15 U.S.C. § 16(a). With increasing frequency, parties to antitrust agreements are inserting into consent agreements nonliability clauses such as that contained in the MFJ. We do not believe that the mere appendage of such a clause should automatically make section 5(a) inapplicable; such a per se rule would contravene the congressional mandate contained in the statute. The question in each case must be whether the judgment, considered as a whole, is "to the effect that" the defendant has violated the antitrust laws. *See also Michigan v. Morton Salt Co., supra*, 259 F.Supp. at 62 (recital in consent decree that decree was entered before the taking of any testimony and without adjudicating any question of law or fact does not prevent "the courts from considering whether it would be consistent with the purpose of § 5(a) to allow the decree to exempt a defendant from the prima facie rule").

The MFJ contains no liability findings. The only mention of liability is the nonliability clause. Although the district court which approved the MFJ considered the evidence of an antitrust violation, the court expressly stated that its observations were based on incomplete evidence and were not intended to be a final determination on the liability of AT & T. *United States v. AT & T, supra*, 552 F.Supp. at 161–63. The court also explicitly expressed doubt about the applicability of section 5(a) to the MFJ. *Id.* at 211. As we noted earlier, AT & T could have had motives for consenting to the MFJ unrelated to the question whether AT & T was guilty or believed it was guilty of any antitrust violations. On these facts, we conclude that the district court did not err in finding that the MFJ was not a judgment to the effect that AT & T violated the antitrust laws.

Because we conclude that the district court did not err in denying SPCC's request to apply section 5(a) to the MFJ, we need not address the question whether AT & T successfully rebutted any prima facie effect of the MFJ.

## V

We sustain the district court's denial of SPCC's Rule 60(b)(6) motion on the ground that any error involving the definition of the relevant market was harmless. SPCC waived its other estoppel claims with respect to the MCI case, and the MFJ entered in the government's case was entitled to neither collateral estoppel nor prima facie effect. The judgment is AFFIRMED.