UNITED STATES of America, Plaintiff,

v.

**COMMODITIES EXPORT CO. and Old Republic Insurance Co., Defendants.**

**Court No. 89–03–00144.**

United States Court of International Trade.

March 14, 1990.

Stuart M. Gerson, Asst. Atty. Gen., Washington, D.C., Joseph I. Liebman, Atty. in Charge, Intern. Trade Field Office, Commercial Litigation Branch, Civ. Div., U.S. Dept. of Justice, and Mark S. Sochaczewsky, New York City, for plaintiff.

Lubienski, Lubienski & Lubienski, Walter H. Lubienski, Detroit, Mich., and Roger E. Craig, Naples, Fla., for defendants.

## OPINION

TSOUCALAS, Judge:

Plaintiff brings this action on behalf of the United States Customs Service to recover unpaid liquidated damages in the amount of $6,293.96, plus interest, from defendants, Commodities Export Co. ("Commodities") and its surety, Old Republic Insurance Co. ("Old Republic").

The issue at hand is whether this Court has subject matter jurisdiction over a dispute arising out of an alleged breach of a warehouse bond by defendant, a duty-free shop. Plaintiff maintains the court has jurisdiction based on 28 U.S.C. § 1582(2) (1982), which states in part:

> The Court of International Trade shall have exclusive jurisdiction of any civil action which arises out of an import transaction and which is commenced by the United States—
>
> . . . .
>
> (2) to recover upon a bond relating to the importation of merchandise required by the laws of the United States or by the Secretary of the Treasury;

Defendants contest subject matter jurisdiction, claiming the transaction in question is not an "import transaction" within the meaning of the statute because duty-free shops are not importers and do not engage in "import transactions."

### Background

Commodities is a duty-free store which operates a private, Class 2, bonded warehouse as an essential part of its business. Bonded warehouses are used by duty-free stores to expedite the exportation of goods from the United States. Duty-free stores place goods in these warehouses and sell in export from their retail stores. Commodities sells both foreign and domestic goods. According to its submissions, foreign-made goods account for two-thirds (⅔) of the goods Commodities sells.

Commodities operates from a location across from the Ambassador Bridge in Detroit, Michigan. The bridge leads directly into Canada and Commodities sells goods to consumers going directly into Canada. If the goods leave the warehouse but do not go directly into Canada, they have entered the stream of commerce of the United States without any import duties having been paid on them as required by the laws of the United States. Such goods are known as "runaways". Because of this potential problem, Customs keeps a close watch on duty-free shops and traditionally controlled their recordkeeping. However, in 1982, Customs put duty-free stores on an "honor system" whereby the owners of the bonded warehouses would henceforth be responsible for the recordkeeping, subject to "spot checks" by Customs officials. To insure payment of duties and other charges due to runaways and other infractions, the owners of the warehouses are required to post with Customs a warehouse bond pursuant to 19 U.S.C. § 1555 (1988).[1]

On December 1, 1982, Commodities and its surety, Old Republic, executed and delivered to Customs a Proprietors Warehouse Bond for Storage and Manipulation of Merchandise, Class 2 ("bond"), in accordance with 19 U.S.C. § 1555, in the amount of $50,000. Under the terms of the bond, defendants promised that for each failure to comply with the terms of the bond they would pay liquidated damages of $100.00. Additionally, if any merchandise was removed from the warehouse without Customs' approval, defendants would pay liquidated damages equal to five (5) times the duty and tax due on the goods. Bond, Condition 5(g). Defendants further agreed to notify Customs in writing by the close of business the next business day if they discovered any discrepancy in their merchandise. Bond, Condition 5(f). Further, defendants, in accordance with the provisions of the bond, agreed to "[m]ark each package with the correct general order number,

1. 19 U.S.C. § 1555(a) provides:
   . . . Before any imported merchandise not finally released from customs custody shall be stored in any [bonded warehouse], the owner or lessee thereof shall give a bond in such sum and with such sureties as may be approved by the Secretary of the Treasury to secure the Government against any loss or expense connected with or arising from the deposit, storage, or manipulation of merchandise in such warehouse.

warehouse entry number, or seizure number and the corresponding date" and to segregate them by such number. Bond, Conditions 2(b)(c) and (d).

On February 22, 1983, Customs officials conducted a "spot check" inspection of Commodities' warehouse and found a number of irregularities. The inspectors discovered that thirty seven (37) warehouse entries were not marked properly, and seven (7) entries contained shortages. These were held to constitute defaults under Conditions 2(b) and 5(g) of the bond, respectively.

Customs subsequently demanded payment of liquidated damages as provided for in the bond. The amount assessed against Commodities was $6,293.96, the amount at issue in this case. Customs repeatedly issued bills for the sum to Commodities and later to its surety, Old Republic. No payment was ever received for this amount, nor was a protest filed under 19 U.S.C. § 1514 (1988).[2]

On March 29, 1988, Commodities petitioned the United States District Court for the Eastern District of Michigan for injunctive relief against the liquidated damage claims assessed by Customs. The District Court granted Customs' motion to dismiss the case on the basis that the Court of International Trade has exclusive jurisdiction over the contested issues.[3]

On March 17, 1989, Customs commenced this action to recover unpaid liquidated damages in the amount of $6,293.96, plus interest. Defendants contest this Court's subject matter jurisdiction on the basis of their claim that, as a duty-free store, they are not importers, they do not engage in import transactions and thus they cannot be sued in this Court under 28 U.S.C. § 1582(2). They also assert that since the District Court may yet decide it has jurisdiction over the case brought by Commodities, this Court should refrain from exercising its jurisdiction.

### Discussion

■ Defendants argue that this Court should await the outcome of the District Court case. The Court disagrees. The two cases, one brought by Commodities in the District Court and one brought by Customs in this Court, ask for separate and distinct relief. The Court of International Trade has exclusive jurisdiction for actions brought by the United States based on 28 U.S.C. § 1582(2) and need not defer its decision since the District Court cannot have jurisdiction where this Court does. *Vivitar Corp. v. United States*, 761 F.2d 1552, 1559 (Fed.Cir.1985), *cert. denied*, 474 U.S. 1055, 106 S.Ct. 791, 88 L.Ed.2d 769 (1986).

■ The jurisdiction of the Court of International Trade is exclusive and does not depend on the assertion of jurisdiction by the district courts. *Id.* Our appellate court has held that "it is faulty analysis to look first to the jurisdiction of the district courts to determine whether the CIT has jurisdiction." *Id.* Since the CIT's jurisdiction is narrower than the district courts', "[t]he focus must be solely on whether the claim falls within the language and intent of the jurisdictional grant *to* the CIT." *Id.* at 1559–60 (emphasis in original). Otherwise, the district courts would always have jurisdiction, even where Congress clearly intended to give jurisdiction to the CIT. *Id.* at 1559.

Actions on bonds executed under United States laws generally are heard by the

---

**2.** The relevant provisions of 19 U.S.C. § 1514 provide that decisions of the appropriate customs officers regarding, *inter alia,*

  (3) all charges or exactions of whatever character within the jurisdiction of the Secretary of the Treasury;

  ....

shall be final and conclusive ... unless a protest is filed in accordance with this section, or unless a civil action contesting the denial of a protest, in whole or in part, is

commenced in the United States Court of International Trade....

**3.** The United States Court of Appeals for the Sixth Circuit vacated the judgment of the District Court and remanded the case for further consideration of a number of issues, including a due process argument made by Commodities. *Commodities Export Co. v. United States Customs Service*, 888 F.2d 431 (1989). The District Court has not yet issued its decision on remand.

district courts or state courts. 28 U.S.C. § 1352 (1982). The sole exception to this rule is the exclusive jurisdiction of the Court of International Trade under 28 U.S.C. § 1582. That section provides for the CIT to hear civil actions which arise out of import transactions and which are commenced by the United States to, *inter alia,* "recover upon a bond relating to the importation of merchandise required by the laws of the United States or by the Secretary of the Treasury." 28 U.S.C. § 1582(2). Hence, a number of statutory requirements must be satisfied for this Court to retain such jurisdiction.

■ First, the action must be a civil action that arises out of an import transaction. Second, the action must be commenced by the United States. Third, the action must be commenced to collect on a bond relating to the importation of merchandise. As the case before this Court was commenced by the United States, the second requirement is satisfied; defendants acknowledge this. *Defendants' Special Appearance and Motion to Dismiss for Lack of Subject Matter Jurisdiction* at 3 ("Defendants' Motion to Dismiss"). Thus, the only questions before this Court are whether the action arose out of an import transaction and whether the warehouse bond related to the importation of merchandise.[4]

Defendants argue that this action did not arise out of an import transaction and that the bond did not relate to the importation of merchandise. *Defendants' Motion to Dismiss* at 3. Though they stored foreign-made goods in their bonded warehouse, defendants claim that, as duty-free merchants, they cannot be classified as importers and their dealings cannot be characterized as "import transactions," since they operate "exclusively in *export.*" *Id.* (emphasis in original).

The trade statutes provide no explicit definitions for "importation" and "import

transaction." However, the regulations promulgated by the Treasury Department give two definitions for "date of importation" depending on whether the merchandise arrives in the United States by vessel or by other means. 19 C.F.R. § 101.1(h) (1989). If it arrives by vessel, the merchandise is deemed imported on "the date on which the vessel arrives within the limits of a port in the United States with intent then and there to unlade such merchandise." *Id.* If it arrives by another mode, the merchandise is considered imported on "the date on which the merchandise arrives within the Customs territory of the United States." *Id.*

In interpreting the trade laws, courts frequently have relied on the ordinary meaning of "importation." *Cunard Steamship Co. v. Mellon,* 262 U.S. 100, 121, 43 S.Ct. 504, 506, 67 L.Ed. 894 (1923); *Kee Co. v. United States,* 13 CCPA 105, 109, T.D. 40943 (1925); *Sterling Bronze Co. v. United States,* 12 CCPA 338, 340, T.D. 40487 (1924). *Black's Law Dictionary* defines importation as "the act of bringing goods and merchandise into a country from a foreign country." *Black's Law Dictionary* at 680 (5th Ed.1979). Justice Van Devanter expanded on this definition in *Cunard.* He wrote that importation

> consists in bringing an article into a country from the outside. If there be an actual bringing in it is importation regardless of the mode in which it is effected. Entry through a custom house is not of the essence of the act.

*Cunard,* 262 U.S. at 122, 43 S.Ct. at 507.

Defendants note in their motion to dismiss that the storage of dutiable, foreign-made merchandise in a bonded warehouse, by itself, does not constitute importation into the United States. *Defendants' Motion to Dismiss* at 4. The predecessor to our appellate court long ago stated that "goods in bonded warehouses are not to be

---

4. Defendants contest the validity of the bond, alleging that Customs has not produced powers of attorney to bind Commodities to the attorneys-in-fact who signed the bond and, as a result the Court should grant defendants' motion to dismiss. *Defendants' Special Appearance and*

*Reply to Plaintiff's Opposition to Defendants' Motion to Dismiss for Lack of Subject Matter Jurisdiction* at 4. The Court need not rule on the validity of the signatures at this time. Since Customs has brought this action to collect on a bond, that part of 28 U.S.C. § 1582 is satisfied.

considered as imported until a permit of delivery has been issued and they enter into the commerce of the country." *Stone and Downer v. United States*, 19 CCPA 259, 264, T.D. 45388 (1931) (citations omitted), *cert. denied*, 287 U.S. 619, 53 S.Ct. 20, 77 L.Ed. 538 (1932).

However, the Supreme Court tacitly acknowledged that foreign-made goods in Customs warehouses are imports when it wrote that *"imports* may be stored duty-free for prescribed periods" in bonded warehouses. *Xerox Corp. v. County of Harris, Texas*, 459 U.S. 145, 150, 103 S.Ct. 523, 526, 74 L.Ed.2d 323 (1982) (emphasis added). This concept was restated in *R.J. Reynolds Tobacco Co. v. Durham County, North Carolina*, in which the Supreme Court dealt with the issue of foreign-made goods stored in Customs bonded warehouses under 19 U.S.C. § 1555. 479 U.S. 130, 107 S.Ct. 499, 93 L.Ed.2d 449 (1986). Referring to goods stored in a Class 2 warehouse, as the goods in the instant case were, the Court inferred that such goods are importations, but simply are not subject to duties unless withdrawn from the warehouse and injected into the stream of commerce of the United States. *Id.* at 133–34, 107 S.Ct. at 503. Hence, while the Supreme Court has not explicitly held that foreign-made goods in bonded warehouses are imports, the implication that they are is quite clear.

Additionally, in *United States v. John V. Carr & Son, Inc.*, the Customs Court defined imported merchandise as

> *merchandise* that has been brought within the limits of a port of entry *from a foreign country* with intention to unlade, and the word *'importation'* as used in tariff statutes, unless otherwise

limited, means merchandise to which that condition or status has attached. 58 Cust.Ct. 809, 813, 266 F.Supp. 175, 178 (1967) (emphasis in original), *aff'd*, 396 F.2d 1017, 55 CCPA 111 (1968), quoting *Porto Rico Brokerage Co. v. United States*, 76 F.2d 605, 23 CCPA 16, T.D. 47672 (1935); and *Procter & Gamble Mfg. Co. v. United States*, 19 CCPA 415, T.D. 45678 (1932). This Court has adopted Webster's definition for the term "unlade." *American Mail Line v. United States*, 6 Cust.Ct. 90, 93, C.D. 435 (1941). It was held to mean "to take the load from; to take out the cargo of; as to unlade a ship." *Id.*, quoting Webster's *New International Dictionary*. Thus, once goods are within the jurisdictional limits of the United States with the intent to discharge, they are imports under this definition.[5] As the goods in this action had already passed into the bonded warehouse, they were well beyond that point.[6]

Defendants argue that they are entitled to special treatment because they are a duty-free store and do not bring goods into the United States for the purpose of injecting them into the stream of commerce. *Defendants' Motion to Dismiss* at 5. They recognize this Court's jurisdiction over actions brought by Customs to collect liquidated damages on an import bond. But they claim that such is not this case because as a duty-free store they are not importers, and the bond is not an "importation bond" subject to CIT jurisdiction under 28 U.S.C. § 1582. *Id.*

The Omnibus Trade and Competitiveness Act of 1988 defines duty-free enterprise as

> a person that sells, for use outside the customs territory, duty-free merchandise that is delivered from a bonded warehouse to an ... exit point for exportation

---

**5.** Our appellate court's predecessor has held that "unless the contrary clearly appears," an importation is "the bringing of goods within the jurisdictional limits of the United States with the intention to unlade them." *Henry Hollander Co. v. United States*, 22 CCPA 645, 648, T.D. 47632 (1935). *See also Sherwin–Williams Co. v. United States*, 38 CCPA 13, 18 (1950); *American Customs Brokerage Co. v. United States*, 72 Cust.Ct. 245, 253, C.D. 4546, 375 F.Supp. 1360, 1366 (1974).

**6.** That is not to say, however, that the goods were subject to duty or tax while in the bonded warehouse. Though technically "imports," foreign-made goods in a bonded warehouse remain exempt from duties and taxes until either they are withdrawn (as has been alleged here) or five years pass from the date of importation. 19 U.S.C. § 1557(a) (1988).

by, or on behalf of, individuals departing from the customs territory.

19 U.S.C. § 1555(b)(8)(D) (1988). Duty-free merchandise is defined as goods on which no Federal duty or tax has been charged "pending exportation from the customs territory." 19 U.S.C. § 1555(b)(8)(E). The unique nature of a duty-free store is that it sells goods for immediate export from the United States so that its customers need not pay Federal duties and taxes on the goods. There is no mention, however, in either the statutes or accompanying regulations that duty-free establishments are not importers, nor that the goods are not imports while in the warehouse. Logic dictates that before one can export foreign goods from the United States, they must first be imported.

The regulations interpreting the trade statutes define "importer" as "the person primarily liable for the payment of any duties on the merchandise, or an authorized agent acting on his behalf." 19 C.F.R. § 101.1(1) (1989). The statute, regulations and caselaw unequivocally state that if goods held in a bonded warehouse prior to payment of duties and taxes are removed from the warehouse and enter into the stream of commerce of the United States, duties and taxes become due. 19 U.S.C. § 1557(a); 19 C.F.R. § 113.62(a)(ii) (1989); *R.J. Reynolds*, 479 U.S. at 134, 107 S.Ct. at 503; *Xerox*, 459 U.S. at 150, 103 S.Ct. at 526. If such duties and taxes become due on goods stored in Commodities' bonded warehouse because of their injection into the United States commerce in violation of their warehouse bond with Customs, Commodities or its surety would be liable to pay the duties and taxes, as well as any liquidated damages provided for in the bond. As the party liable for payment of Customs duties and taxes, Commodities is rightly classified as an importer. 19 C.F.R. § 101.1(1).

■ Defendants assert that, since the bond does not refer to importation, it could not logically be a bond "relating to the importation of merchandise." *Defendants' Motion to Dismiss* at 5–6. In *R.J. Reynolds*, the Supreme Court stated that "the central purpose behind customs-bonded warehouses [is] to ensure that federal customs duties are collected." 479 U.S. at 131, 107 S.Ct. at 502. While the bond is not entitled "importation bond," and does not refer to the importation of merchandise, it clearly was designed to deal with instances where duty-free goods have in fact entered into the stream of commerce of the United States without payment of the appropriate duties and taxes. As such, the bond related to the importation of merchandise.

The terms of the bond provide for liquidated damages where merchandise enters the country in violation of the bond. Customs here is seeking to recover unpaid liquidated damages assessed by them because of alleged shortages at the warehouse which Customs claims entered the stream of commerce of the United States. The bond details the parties' obligations regarding merchandise held in Customs bonded warehouses. When Customs believes the goods entered the stream of commerce (or the bond was otherwise violated), Customs is entitled to assess liquidated damages; if they remain unpaid or defendants challenge the assessment, Customs may seek payment in this Court. Duty-free establishments are exempt from duties and taxes so long as they comply with the terms and conditions of their warehouse bond; they are not, however, exempt from the jurisdiction of this Court.

*Conclusion*

Accordingly, defendants' motion to dismiss for lack of subject matter jurisdiction is hereby denied. Having decided the jurisdictional issue, the Court hereby denies defendants' motion for reconsideration. Defendants' motion for certification is also denied pending a final decision on the merits.