**COMMODITIES EXPORT CO.,**
a Michigan Corporation,
Plaintiff–Appellant,

v.

**U.S. CUSTOMS SERVICE, an agency**
of the U.S. Government,
Defendant–Appellee.

No. 90–2308.

United States Court of Appeals,
Sixth Circuit.

Argued Sept. 19, 1991.

Decided Feb. 19, 1992.

Rehearing Denied March 30, 1992.

Walter H. Lubienski (briefed), Lubienski, Lubienski & Lubienski, Detroit, Mich., Roger E. Craig (argued and briefed), Naples, Fla., for plaintiff-appellant.

Carolyn Bell Harbin, Asst. U.S. Atty., William L. Woodard (argued and briefed), Office of U.S. Atty., Detroit, Mich., for defendant-appellee.

Before MERRITT, Chief Judge, NELSON, Circuit Judge, and CELEBREZZE, Senior Circuit Judge.

MERRITT, Chief Judge.

Commodities Export Company seeks to enjoin the United States Customs Service from enforcing certain claims. The District Court originally dismissed Commodities' petition on the ground that the claims were within the exclusive jurisdiction of the Court of International Trade. We vacated

that decision and remanded the case for further analysis of the jurisdictional issues. While Commodities' appeal was pending in this court, the Customs Service brought suit in the Court of International Trade ("CIT") to enforce one of its claims against Commodities. The CIT held that it possessed exclusive subject matter jurisdiction over the action between the two parties. Subsequently, the District Court granted Customs' motion to dismiss. The issue to be decided in this appeal is whether the District Court should accord *res judicata* effect to the CIT's intervening decision. We hold that the CIT's decision is *res judicata*. Accordingly, we remand this case to the District Court with instructions to transfer Commodities' action to the CIT pursuant to 28 U.S.C. § 1631. Further, we vacate the decision of the District Court entered upon remand that Customs did not violate Commodities' due process rights.

## I.

The underlying facts of the dispute between the two parties are set out in detail in *Commodities Export Co. v. United States Customs Service*, 888 F.2d 431 (6th Cir.1989). In that opinion, we vacated the decision of the District Court which had dismissed Commodities' action for lack of subject matter jurisdiction. In remanding the case, we asked the District Court to analyze the applicability of 28 U.S.C. § 1582(2) to Commodities' action.[1] We also ordered the Court to adjudicate the merits of the claim that the United States Customs Service ("Customs") violated Commodities' due process rights.

While Commodities' first appeal was pending in this Court, Customs sued Commodities in the CIT. Customs sought to collect bond liquidated damages assessed against Commodities, damages which Commodities had disputed in its Sixth Circuit

action. In the CIT, Customs asserted that the CIT had exclusive subject matter jurisdiction over Customs' action pursuant to § 1582(2). Commodities disagreed and moved to stay the CIT proceedings until the District Court completed its review of Commodities' action on remand.

In March 1990, the CIT ruled that it possessed exclusive jurisdiction over Customs' suit. *United States v. Commodities Export Co.*, 733 F.Supp. 109, 111 (Ct.Int'l Trade 1990). The CIT refused to stay its hand until the District Court decided Commodities' case on remand. It reasoned that "the District Court cannot have jurisdiction where this Court does." *Id.* at 111. Commodities then petitioned the Court of Appeals for the Federal Circuit for a writ of mandamus directing the CIT to vacate its opinion and to stay the proceedings pending resolution of the case before the District Court. In July 1990, the Federal Circuit, in an unpublished order, noted that "the better course, by far, would have been for the Court of International Trade to have stayed its proceedings until the district court proceeding [was] completed." *In re Commodities Export Co. and Old Republic Insurance Co.*, Misc.Docket No. 278 at 3, 4 (Fed.Cir. July 17, 1990) [914 F.2d 270 (Table)]. Nevertheless, the Federal Circuit held that Commodities had not shown that the CIT "clearly overstepped its authority in determining not to stay its proceedings." *Id.* at 3.

Meanwhile, back in the United States District Court, Commodities filed an Amended Petition for Supplemental Relief. Customs moved to dismiss the petition. Both parties then filed a flurry of motions and replies. The District Court held a hearing in October 1990 at which it heard argument, but received no testimony. In November the District Court granted Customs' motion to dismiss.[2]

---

**1.** Section 1582 of Title 28 establishes CIT jurisdiction over civil actions commenced by the United States. The relevant language is:

The Court of International Trade shall have exclusive jurisdiction of any civil action which arises out of an import transaction and which is commenced by the United States—
. . . .

(2) to recover upon a bond relating to the importation of merchandise required by the laws of the United States or by the Secretary of the Treasury.
28 U.S.C. § 1582 (1980).

**2.** Subsequent to the District Court's dismissal of Commodities' action, the CIT denied a motion by Commodities to dismiss Customs' suit. *Unit-*

With respect to the statutory basis of its subject matter jurisdiction, the District Court found that "the arguments previously asserted by Commodities with respect to the applicability of § 1582(2) have already been addressed by the CIT." Order at 11. Put simply, the District Court adopted in its entirety the jurisdictional analysis offered by the Court of International Trade in its March 1990 decision. Thus, the District Court held that 28 U.S.C. § 1582(2) vests exclusive jurisdiction in the CIT over Commodities' action. The Court also rejected Commodities' due process claims. It is the District Court's dismissal of Commodities' action that Commodities now appeals. Commodities asks this Court to overturn the District Court's denial of Commodities' due process claim and to declare that jurisdiction is vested in the lower court pursuant to 28 U.S.C. § 1352 and § 1355.[3]

## II.

While the Sixth Circuit reviews *Commodities Export Co. v. Customs*, the Federal Circuit considers the case of *United States v. Commodities Export Co.* Both actions involve the same parties and a common set of facts. Both courts face a complex jurisdictional issue of first impression. The intervening rulings by the Court of International Trade place us in a difficult position. To address the merits of Commodities' claims would mean denying *res*

*judicata* effect to a judgment of another Article III court and resolving issues that have been fully and fairly litigated in that court. To declare the CIT's decision *res judicata* in the Sixth Circuit, however, would mean relinquishing supervisory power over Commodities' due process claims which the District Court has not addressed satisfactorily on remand. We discuss each issue in turn.

### A. Bond Liquidated Damage Assessments

This case embraces two court-created doctrines: *res judicata* and the "bootstrap" principle. The doctrine of *res judicata* "ensures finality of decisions." *Brown v. Felsen*, 442 U.S. 127, 131, 99 S.Ct. 2205, 2209, 60 L.Ed.2d 767 (1979). It serves to protect adversaries from the expense and vexation attending multiple lawsuits, to conserve judicial resources, and to foster reliance on judicial action by minimizing the possibility of inconsistent decisions. *Montana v. United States*, 440 U.S. 147, 153–54, 99 S.Ct. 970, 973–74, 59 L.Ed.2d 210 (1979). The "bootstrap" principle states that federal courts ordinarily have the power to determine their jurisdiction over an action. *See Chicot County Drainage Dist. v. Baxter State Bank*, 308 U.S. 371, 376, 60 S.Ct. 317, 319, 84 L.Ed. 329 (1939); RESTATEMENT (SECOND) OF JUDGMENTS § 11 cmt. c (1982) [hereinafter RESTATEMENT]; 1B JAMES W. MOORE, MOORE'S

---

ed *States v. Commodities Export Co.,* 755 F.Supp. 418 (Ct.Int'l Trade 1991). In March, 1991, Customs filed suit in the CIT to collect liquidated damages from two additional assessments which were part of Commodities' suit in the District Court. The CIT tried one liquidated damages claim in April 1991 and entered judgment on a jury verdict in favor of Customs in May. Commodities then appealed both the CIT's jurisdictional determination and judgment to the Court of Appeals for the Federal Circuit. The appeal was docketed in the Federal Circuit on August 29, 1991, Docket No. 91–1470.

**3.** Section 1352 of 28 U.S.C. states that:
The district courts shall have original jurisdiction, concurrent with State courts, of any action on a bond executed under any law of the United States, except matters within the jurisdiction of the Court of International Trade under section 1582 of this title.

Commodities argues that contrary to the CIT's ruling adopted by the District Court, Commodities is an exporter, not importer, of goods, and thus its warehouse bond does not fall within 28 U.S.C. § 1582, but rather 28 U.S.C. § 1352 (1980).

Section 1355 of 28 U.S.C. states that:
The district courts shall have original jurisdiction, exclusive of the courts of the States, of any action or proceeding for the recovery or enforcement of any fine, penalty, or forfeiture, pecuniary or otherwise, incurred under any Act of Congress, except matters within the jurisdiction of the Court of International Trade under section 1582 of this title.

Commodities argues that contrary to the CIT's ruling adopted by the District Court, the liquidated damage assessments levied against it by Customs are "penalties" within the meaning of 28 U.S.C. § 1355 (1980).

**226**

FEDERAL PRACTICE ¶ 0.405[4.–1], at 206 (1991) [hereinafter MOORE]. The two doctrines intersect to produce the general rule that jurisdictional determinations are given *res judicata* effect. *Durfee v. Duke*, 375 U.S. 106, 84 S.Ct. 242, 11 L.Ed.2d 186 (1963); *Stoll v. Gottlieb*, 305 U.S. 165, 59 S.Ct. 134, 83 L.Ed. 104 (1938); *Shaw v. Merritt–Chapman & Scott Corp.*, 554 F.2d 786, 789 (6th Cir.1977).

The doctrines did not always intersect. Traditional black-letter law placed greater importance on confining courts within the scope of their jurisdictional mandate than in achieving repose in litigation. Thus, until the late nineteenth century, the judgment of a court which lacked power over the subject matter of the action was deemed null and void. *See* 18 CHARLES A. WRIGHT, ARTHUR R. MILLER & EDWARD H. COOPER, FEDERAL PRACTICE AND PROCEDURE § 4428, at 271–72 (1981) [hereinafter WRIGHT]; Note, *Filling the Void: Judicial Power and Jurisdictional Attacks on Judgments*, 87 YALE L.J. 164 (1977). In a series of decisions, most notably, *Chicot, supra, Treinies v. Sunshine Mining Co.*, 308 U.S. 66, 60 S.Ct. 44, 84 L.Ed. 85 (1939), *Stoll, supra*, and *Des Moines Navigation & R.R. v. Iowa Homestead Co.*, 123 U.S. 552, 8 S.Ct. 217, 31 L.Ed. 202 (1887), the Supreme Court shifted the emphasis from jurisdictional sovereignty to judicial finality. After the Court's decision in *Durfee*, "it seems clear that federal court judgments are binding notwithstanding a simple lack of subject matter jurisdiction...." 18 WRIGHT, *supra*, § 4428, at 282. *Accord* RESTATEMENT, *supra*, § 12 cmt. a (1982); Dobbs, *The Validation of Void Judgments: The Bootstrap Principle*, 53 VA. L.REV. 1003 (1967).

Like most legal rules, the bootstrap principle is subject to certain exceptions. Because the CIT is no ordinary federal court, and because Commodities is no ordinary import-export company, it is necessary to examine whether any of the exceptions to the bootstrap principle apply to the present case.

In discussing these exceptions, it is useful to separate the issue of the court's *power* to determine its jurisdiction from the issue of whether its determination should be binding. The former issue raises questions of legislative intent; the latter, questions of judicial policy. *See generally* Dobbs, 53 VA.L.REV. at 1013, 1027, 1247–48. The two-part bootstrap analysis begins by addressing the issue of power. Only after it is established that the legislature granted the CIT power to decide its own jurisdiction do we then examine whether judicial policy favors the application of *res judicata* to the CIT's judgment. *See id.*

The capacity of federal courts to determine their own jurisdiction derives in large part from the confidence Congress and the Constitution have reposed in Article III courts, specifically, through the substantial (though limited) powers given them. A corollary to this observation is that "[a] court whose jurisdiction is closely confined is one in which the legislature has reposed little confidence; if the legislature has little confidence in a court, it is less likely to have granted that court jurisdiction to determine its own jurisdiction." Dobbs, 53 VA.L.REV. at 1252. *See also* 18 WRIGHT, *supra*, § 4428; 1B MOORE, *supra*, ¶ 0.405[4.–1], at 204–06, nn. 17–22. (1991); RESTATEMENT (FIRST) OF JUDGMENTS § 10(2)(c) (1942); *Anderson v. Pinkett*, 439 F.2d 619 (D.C.Cir.1971). Within this framework, the Court of International Trade's position is unique. The CIT is a special Article III court, created by Congress to exercise jurisdiction "exclusively ... in the resolution of conflicts and disputes arising out of the tariff and international trade laws...." H.R.Rep. No. 1235, 96th Cong., 2d Sess. 28, *reprinted in* 1980 U.S.C.C.A.N. 3729, 3739 ("Customs Court Act of 1980"). *See also* 17 WRIGHT, *supra* § 4103, at 377 (1988) ("The Court of International Trade is one of the few remaining federal courts of specialized jurisdiction."). Thus, the CIT is embued with many powers wielded by federal district courts, *see e.g.*, 28 U.S.C. § 1585, yet is highly restricted in the scope of its subject matter authority.[4]

---

**4.** Section 1585 states:

The Court of International Trade shall possess

all the powers in law and equity of, or as

In light of its narrowly circumscribed jurisdiction it is reasonable to inquire whether Congress intended the CIT to have the power to decide its own jurisdiction.

Not surprisingly, Congress did not speak directly to this issue when it created the CIT in 1980. Nevertheless, when we consider the role Congress intended for the CIT within the larger system of federal courts, it becomes apparent that the CIT acted squarely within its power when it asserted jurisdiction over the present suit. Under the Customs Court Act of 1980, Congress established the CIT as the successor to the then-existing Customs Court. Congress enacted the legislation to respond to widespread confusion concerning the respective jurisdiction of the United States District Courts and the Customs Court. The Act's legislative history describes the then prevailing situation:

> [B]ecause of the limited powers of the Customs Court, litigants often choose another forum, for example, the federal district courts, where they can gain the appropriate relief for their injuries. Most district courts have refused to entertain such suits, citing the Constitutional mandate requiring uniformity in decisions relating to imports.... In doing so, the district courts sought to preserve the Congressional grant of exclusive jurisdiction to the United States Customs Court for judicial review of all matters relating to imports.
>
> The result has been inconsistent judicial decisions.... [T]he type of relief available depends greatly upon a plaintiff's ability to persuade a court that it possesses jurisdiction over a particular case. Thus, some individuals will obtain relief which is denied others, who by chance select an improper forum to institute suit.

H.R.Rep. No. 1235, 96th Cong., 2d Sess. 19, *reprinted in* 1980 U.S.C.C.A.N. 3729, 3731. Congress, through the Act, revamped the Customs Court's jurisdiction and increased its remedial powers in order to provide "a comprehensive system of judicial review of civil actions arising from import transactions," thereby "ensur[ing] greater efficiency in judicial resources and uniformity in the judicial decisionmaking process." *Id.* To these ends, Congress also established a right of appeal of CIT decisions to the Federal Circuit. 28 U.S.C. § 1295(a)(5) (1982).

Congress invested the CIT with exclusive jurisdiction over a wide range of trade matters encompassing complex regulatory schemes in order to allocate power between the CIT and the district courts. To hold that the CIT *lacks* the power to determine its own jurisdiction would undermine Congress' goal of creating uniformity with respect to this nation's trade laws. *See* Dobbs, 53 VA.L.REV. at 1256. Such a holding would invite the various district and circuit courts to redraw the jurisdictional lines separating the two tribunals, and thereby jeopardize the uniformity which Congress, through the Act, sought to secure. Accordingly, we hold that that the CIT has the power to decide its own jurisdiction.

■ We turn now to whether, as a matter of policy, the CIT's judgment should be deemed *res judicata*. As noted earlier, the bootstrap principle is not without exceptions. *Durfee*, 375 U.S. at 114, 84 S.Ct. at 246. Were a substantial public interest to be undermined or an intentional and flagrant usurpation of judicial authority to be perpetuated by a *res judicata* determination, then there would be strong grounds for not giving preclusive effect to the juris-

---

conferred by statute upon, a district court of the United States.

We note that 28 U.S.C. § 1585 does not, by itself, resolve the issue whether the CIT has jurisdiction to determine its jurisdiction. The statute speaks to the power of the CIT once jurisdiction is established. It does not expressly confer (or deny) the power to determine jurisdiction. Nor does it expand the CIT's jurisdic-

tion. *See Manufacture de Machines du Haut–Rhin v. Von Raab*, 569 F.Supp. 877 (Ct.Int'l Trade 1983). Granted, the more the CIT resembles the District Court with respect to the powers it wields, the more persuasive is the argument that the CIT, like the District Court, ought to be able to determine its own jurisdiction. Section 1585, however, is not dispositive on this point.

dictional decision. *See id.* at 114 n. 12, 84 S.Ct. at 247 n. 12; Dobbs, 53 VA.L.REV. at 1013, 1257–58. Section 12 of the RESTATEMENT (SECOND) OF JUDGMENTS sets out factors to be examined in deciding whether, as a matter of *policy, res judicata* should attach to a court's jurisdictional determination. The RESTATEMENT suggests that a jurisdictional determination should not be deemed conclusive if:

> (1) The subject matter of the action was so plainly beyond the court's jurisdiction that its entertaining the action was a *manifest abuse of authority;* or
>
> (2) Allowing the judgment to stand would *substantially infringe* the authority of another tribunal or agency of government; or
>
> (3) The judgment was rendered by a court *lacking capability to make an adequately informed determination* of a question concerning its own jurisdiction and as a matter of procedural fairness the party seeking to avoid the judgment should have opportunity belatedly to attack the court's subject matter jurisdiction.

(emphases added). *See also* Dobbs, 53 VA. L.REV. at 1248–57.

Commodities operates a warehouse in which it stores foreign goods later sold in the United States. As a duty-free shop, Commodities is required by federal law to maintain a bond on the warehouse. 19 U.S.C. § 1555 (1930). The bond is meant to guarantee that Commodities will comply with the numerous regulations for storing merchandise in and withdrawing it from its bonded warehouse. 19 U.S.C. § 1623(a) (1930). Thus, when Customs filed suit in the CIT, its action to recover liquidated damages arising out of Commodities' alleged breach of the bond's conditions reasonably appeared to the CIT to be the type of action envisioned by the authors of § 1582(2). *See supra* note 1.

While it can be argued that this case presents a difficult jurisdictional question capable of being resolved in either party's favor, *see supra* note 3, it is not plausible to argue that the CIT "manifestly abused its authority" by asserting jurisdiction.

Congress intended that the CIT bring its "specialized expertise" to bear on actions arising out of import transactions. H.R.Rep. No. 1235, 96th Cong., 2d Sess. 47, *reprinted in* 1980 U.S.C.C.A.N. 3729, 3731, 3760. In light of this expertise, it is hard to maintain that the CIT "lacked capability to make an adequately informed determination of a question concerning its own jurisdiction." Similarly, it is difficult to argue that the District Court's authority was "substantially infringed" by the CIT's assertion of jurisdiction since this case presents a jurisdictional issue of first impression. In sum, far from abusing its authority, the CIT could reasonably believe that it was uniquely qualified and empowered to hear Customs' case.

Accordingly, we hold that the CIT has the power to determine its own jurisdiction, that the CIT properly exercised that power in this case, and that its jurisdictional determination is *res judicata.* The preclusive effect of the CIT's jurisdictional determination is not lessened by the fact that Commodities has appealed that determination to the Federal Circuit, for it is well established that a final trial court judgment operates as *res judicata* while an appeal is pending. *Huron Holding Corp. v. Lincoln Mine Operating Co.,* 312 U.S. 183, 188–89, 61 S.Ct. 513, 515, 85 L.Ed. 725 (1941); *Southern Pac. Communications Co. v. AT & T Co.,* 740 F.2d 1011, 1018 (D.C.Cir.1984); *Refior v. Lansing Drop Forge Co.,* 134 F.2d 894, 896 (6th Cir.1943). *See also* RESTATEMENT, *supra,* § 13 cmt. f; 18 WRIGHT, *supra,* § 4433, at 308, 311; 1B MOORE, *supra,* ¶ 0.416[3], at 521. Nor does the preclusive effect of the CIT's determination depend upon the correctness of the decision, for even erroneous judgments are accorded *res judicata* effect. *Angel v. Bullington,* 330 U.S. 183, 187, 67 S.Ct. 657, 659, 91 L.Ed. 832 (1947).

### B. Commodities Due Process Claim

 Having held the CIT's jurisdictional ruling *res judicata,* we turn to Commodities' due process claims. Commodities asserts that the Detroit office of the Customs Service has set out to ruin Commodities'

business by bringing meritless or inflated assessments for liquidated damages in violation of the Due Process Clause of the Fifth Amendment. (Commodities advanced a similar allegation in 1976 when it sought, and received, an injunction against Customs after Customs mandated that Commodities institute new and onerous operating procedures or cease business). Commodities' allegations were ignored by Customs and by the District Court in the first round of litigation. We remanded the case for a hearing on Commodities' due process claim. On remand, the District Court heard argument and accepted extended briefing, but received no testimony. The Court concluded that no due process violation occurred.

After reviewing the record and having twice listened to oral argument, we remain of the opinion that Commodities has not been given adequate opportunity to present its due process arguments to a court of law. We therefore vacate the District Court's due process decision. The issue which then arises is whether, despite its tightly circumscribed jurisdiction, the CIT has the authority to review Commodities' due process claim, or whether we must sever that claim from the rest of the case and remand to the District Court for further proceedings. For reasons set out below, we believe that the CIT does possess adjudicatory authority over Commodities' due process claim.

Section 1585 of Title 28 of the United States Code states that the CIT "shall possess all the powers in law and equity of, or as conferred by statute upon, a district court of the United States." 28 U.S.C. § 1585 (1980). In contrast, the CIT's forerunner, the Customs Court, possessed powers similar to those of a district court only with respect to "preserving order, compelling the attendance of witnesses and the production of evidence." 28 U.S.C. § 1581 (1976), *amended by* 28 U.S.C. § 1585 (1982). Despite the Customs Court's more limited powers, courts had "long recognized that the Customs Court [had] authority to adjudicate issues of a constitutional nature." *J.C. Penney Co. v. United States*

*Treasury Dept.*, 439 F.2d 63, 66 (2d Cir. 1971).

The Customs Court's authority to pass on constitutional issues was challenged as early as 1934, when an importer of spirits attacked as unconstitutional the Tariff Act of 1922 under which he was forced to pay customs duties. *Riccomini v. United States*, 69 F.2d 480 (9th Cir.1934). The plaintiff-importer filed suit in federal district court. The court sustained the government's demurrer, holding that jurisdiction properly rested in the Court of Customs Appeals (the precursor to the Customs Court). On appeal, the plaintiff claimed that the Court of Customs Appeals "is not competent to determine the constitutionality of a statute, and that therefore [plaintiff] must repair to the United States District Court for relief." *Id.* at 483. The Ninth Circuit rejected this contention. Surveying the Customs Administration Act of 1890, and the Tariff Acts of 1909 and 1922, it observed that "Congress meant to establish a complete and exclusive system for the handling of customs cases...." 69 F.2d at 483. Though the Court of Customs Appeals, unlike the present-day CIT, was "a legislative and not a constitutional court," *see Ex parte Bakelite Corp.*, 279 U.S. 438, 49 S.Ct. 411, 73 L.Ed. 789 (1929), the Ninth Circuit held it competent to adjudicate constitutional claims. 69 F.2d at 483.

The Customs Court's authority was challenged again in 1960 when a group of petroleum importers attacked the constitutionality of a Presidential proclamation raising taxes on petroleum imports. *Eastern States Petroleum Corp. v. Rogers*, 280 F.2d 611 (D.C.Cir.1960), *cert. denied*, 364 U.S. 891, 81 S.Ct. 222, 5 L.Ed.2d 187 (1960). The District Court dismissed the action for lack of jurisdiction. On appeal, the importers asserted that they were "constitutionally entitled ... to have [their] constitutional claims heard and determined in an Article III court...." *Id.* at 614. The Court of Appeals for the District of Columbia, noting there was "considerable doubt" as to the Article III status of the Customs Court, assumed, *arguendo*, that it was a legislative court. *Id.* The appeals court never-

theless determined that "[e]ven in cases where an adverse decision of the customs courts involving constitutional questions stands unreviewed [by an Article III court]," due process is not denied. *Id.*

In light of the CIT's Article III status, and the right of appeal to the Federal Circuit, with recourse to the Supreme Court through petition for certiorari, *Commodities Export Co.* presents a stronger case for the CIT's authority to adjudicate constitutional claims than *Riccomini* and *Rogers*. In short, Judge Bazelon's words in *Rogers* ring even truer today: "In our view, the distinctions between the customs courts and the district courts do not rise to a level at which it may be said that final adjudication of constitutional questions in the customs courts offends the requirements of due process." *Accord Horton v. Humphrey*, 146 F.Supp. 819 (D.D.C.), *aff'd*, 352 U.S. 921, 77 S.Ct. 224, 1 L.Ed.2d 157 (1956). Thus, we transfer this case in its entirety to the CIT, pursuant to 28 U.S.C. § 1631.

Our holding comports with the principles of judicial economy articulated in the Customs Court Act. Commodities' due process claims are closely intertwined with the merits of Customs' bond liquidated damages assessments. Findings of fact with respect to one will likely affect the outcome of the other. Thus, to sever the claims "so that the district [court] deal[s] with ... constitutional issues arising out of customs controversies while the [CIT] concerns itself with the remaining customs issues," *J.C. Penney Co. v. United States Treasury Dept.*, 439 F.2d 63, 66 (2d Cir.1971), would undermine Congress' attempt to ensure "greater efficiency in judicial resources and uniformity in the judicial decisionmaking process." H.R.Rep. No. 1235, 96th Cong., 2d Sess. 47, *reprinted in* 1980 U.S.C.C.A.N. 3729, 3731.

### III.

■ In the Sixth Circuit Commodities appeals the dismissal of its action on remand by the District Court. In the Federal Circuit it appeals the CIT's jurisdictional determination and subsequent judgment awarding Customs liquidated damages. The pendency of dual appeals in sister circuits complicates matters. Should the Federal Circuit overturn the CIT decision which we deem binding, there would result two conflicting appellate decisions, each entitled to conclusive effect. *See Reed v. Allen*, 286 U.S. 191, 52 S.Ct. 532, 76 L.Ed. 1054 (1932).

We believe that such a conundrum can be avoided through recourse to Fed.R.Civ.P. 60(b)(5). That Rule provides that "[o]n motion and upon such terms as are just, the court may relieve a party from a final judgment, order, or proceeding [if] ... (5) ... a prior judgment upon which it is based has been reversed or otherwise vacated, or it is no longer equitable that the judgment should have prospective application...." Were the Federal Circuit to reverse the CIT's jurisdictional determination, Commodities could file a Rule 60(b)(5) motion in this Circuit. Similarly, Commodities could make such a motion were its due process claims left wholly unaddressed by the CIT and Federal Circuit. Recourse to Rule 60(b)(5) in such circumstances is endorsed by courts and commentators alike. *See, e.g., Hawkes v. IRS*, 467 F.2d 787, 793 (6th Cir.1972); *Michigan Surety Co. v. Service Machinery Corp.*, 277 F.2d 531 (5th Cir. 1960). *See generally* RESTATEMENT, *supra*, § 16 (1982) ("A judgment based on an earlier judgment is not nullified automatically by reason of the setting aside, or reversal on appeal ... but the later judgment may be set aside, in appropriate proceedings...."); 1B MOORE, *supra*, ¶ 0.416[4], at 530; 7 MOORE, *supra*, ¶ 60.26[3]; 11 CHARLES A. WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE, § 2863, at 203–04 (1973); 18 WRIGHT, *supra*, § 4433, at 312 n. 15 (1981).

### IV.

Adhering to the well-established principle of *res judicata*, and in the interest of judicial economy, we REMAND this case to the District Court with orders to TRANSFER Commodities' action to the Court of International Trade pursuant to 28 U.S.C. § 1631. Further, we VACATE the due process portion of the District Court's deci-

sion entered after our first remand of this case.

DAVID A. NELSON, Circuit Judge, concurring.

I concur in the judgment and in most of Chief Judge Merritt's scholarly opinion. Unlike my colleagues, however, I am not prepared to say that the district court failed to accord Commodities an adequate opportunity to present its due process arguments.

The reason the district court's due process decision ought to be vacated, in my view, is that we erred in directing the district court to decide the due process issues in the first place. As indicated in the separate opinion I filed when this case was last before us, 888 F.2d at 439–40, I have thought from the beginning that the case belonged in the Court of International Trade and not in the district court.