**COMMONWEALTH of Kentucky,**
**Appellant,**

v.

**Timothy Cory LOOPER, Appellee.**

No. 2008–CA–000850–MR.

Court of Appeals of Kentucky.

May 8, 2009.

Discretionary Review Denied by
Supreme Court Oct. 21, 2009.

Jack Conway, Attorney General of Kentucky, Bryan D. Morrow, Assistant Attorney General, Frankfort, KY, for appellant.

Shane A. Young, Elizabethtown, KY, Brian Butler, Louisville, KY, for appellee.

Before COMBS, Chief Judge; ACREE, Judge; BUCKINGHAM,[1] Senior Judge.

*OPINION*

COMBS, Chief Judge.

The McCracken Circuit Court declared Kentucky Revised Statute (KRS) 150.740 unconstitutional. The Commonwealth of Kentucky has appealed. After our review, we affirm.

In 2006, Kentucky's General Assembly enacted KRS 150.740 in response to a crisis involving Chronic Wasting Disease (CWD). CWD had been found in two states that border Kentucky—West Virginia and Illinois. CWD affects the Cervidae animal family ("cervids"), which includes elk, white-tailed deer, and mule

---

1. Senior Judge David C. Buckingham sitting as Special Judge by assignment of the Chief Justice pursuant to Section 110(5)(b) of the Kentucky Constitution and KRS 21.580.

deer. It is similar to Bovine Spongiform Encephalopathy, which is commonly known as "mad cow disease." Kentucky's statute provides in part:

There shall be a ban on the importation of the members of the animal family Cervidae into the Commonwealth. A person shall be guilty of a Class D felony upon conviction for violating this subsection.

KRS 150.740 was not enforced until September 20, 2007, when an agent of the Kentucky Department of Fish and Wildlife arrested Timothy Cory Looper in McCracken County. Neither party disputes the following pertinent facts. Mr. Looper had purchased five elk, one deer, two antelope, and twelve exotic sheep in Missouri and was enroute traveling through Kentucky to a lodge in Tennessee that had purchased them. The animals had been inspected and certified with duly issued health inspection papers; and the Tennessee lodge had a lawful permit. The most efficient route included a section of Interstate 24 in western Kentucky. After their seizure by the Department of Fish and Wildlife, the five elk and one deer were destroyed. A grand jury charged Mr. Looper with six counts—five for the elk and one for the deer—of "Importation of Animal Class Cervidae."

On April 16, 2008, in response to a motion made by Mr. Looper, the McCracken Circuit Court dismissed the charges and ruled that KRS 150.740 is unconstitutional as being void for vagueness. In a thorough, well reasoned order, the trial court held that "the statute does not give reasonable notice of the conduct it seeks to prohibit" by not defining the word "importation."

■ In Kentucky, statutes are to be "written in nontechnical language and in a clear and coherent manner using words with common and everyday meanings."

KRS 446.015. Furthermore, the General Assembly has charged the courts to construe and interpret statutes in harmony with the clear meaning of the language and to apply liberal construction to ascertain and maintain legislative intent. KRS 446.080. "A statute should be construed, *if possible*, so as to effectuate the plain meaning and unambiguous intent expressed in the law." *Bob Hook Chevrolet Isuzu, Inc. v. Commonwealth of Kentucky, Transp. Cab.*, 983 S.W.2d 488, 492 (Ky. 1998) (citations omitted) (emphasis added).

■ We shall examine the doctrine of "void for vagueness" in the context of a challenge to the constitutionality of a criminal statute. The doctrine arises from "due process principles and is directed toward ensuring fair notice in the clarity and precision of penal provisions[.]" *Wilfong v. Commonwealth*, 175 S.W.3d 84, 95 (Ky. App.2004). A criminal statute must "define the criminal offense with sufficient definiteness that ordinary people can understand what conduct is prohibited[.]" *Kolender v. Lawson*, 461 U.S. 352, 357, 103 S.Ct. 1855, 75 L.Ed.2d 903 (1983). More importantly, the doctrine requires the legislature to provide law enforcement with sufficiently clear guidelines to preclude arbitrary enforcement. *Id.* at 358, 103 S.Ct. 1855 (citations omitted). If a term is undefined, it is to be understood to carry its "common, everyday meaning." *Wilfong*, 175 S.W.3d at 96.

■ In the case before us, we must scrutinize the legislature's use of the word "importation" in KRS 150.740. The statute does not define the word. The Commonwealth argues that its common, everyday meaning is "to bring in." However, Mr. Looper relies on the recitation by the trial court that an alternate common meaning is to bring in "**to remain** ... for sale

or personal use." Brief for Appellee, Trial Court's Order at p. 19. (Emphasis added.)

Black's Law Dictionary defines *importation* as "[t]he bringing of goods into a country from another country." 759 (7th ed.1999). Another definition is "the act or practice of importing[.]" Merriam–Webster's Collegiate Dictionary 582 (10th ed.2002). Like the trial court, we find it necessary to look to the definition of the root word *import.* The pertinent definition in Black's Law Dictionary is "[t]he process of bringing foreign goods into a country." 759 (7th ed.1999). We also find "to bring from a foreign or external source; *esp:* to bring (as merchandise) into a place or country from another country[.]" Merriam–Webster's Collegiate Dictionary 582 (10th ed.2002) (emphasis in original). *Merchandise* is defined as "the commodities or goods that are bought and sold in business." *Ibid.* From these definitions, we discern a connotation of business interest underlying the activity of bringing in particular goods.

Federal courts have recognized the commercial implications of the word *import.* Most discussions of its meaning occur in the context of taxes and tariffs. The United States Customs Court of Appeals succinctly set the standard definition as follows:

> Imported merchandise is merchandise that has been brought within the limits of a port of entry from a foreign country *with intention to unlade,* and the word "importation" ... *unless otherwise limited,* means merchandise to which that condition or status has attached.

*U.S. v. Estate of Boshell,* 14 U.S.Cust.App. 273, 275 (1922) (emphases added). *See also, U.S. v. Commodities Export Co.,* 733 F.Supp. 109, 14 C.I.T. 166 (Ct of Int'l Trade, 1990); *Page & Jones v. U.S.,* 26 C.C.P.A. 124 (Cust. & Pat.App., 1938); *U.S. v. Watches, Watch Parts, Calculators,*

*& Misc. Parts,* 692 F.Supp. 1317 (S.D.Fla. 1988); *Sherwin–Williams Co. v. U.S.,* 38 C.C.P.A. 13 (Cust. & Pat.App., 1950). By their definition, merely transporting an item **through an area** is not the same as importing it. Though KRS 150.740 does not govern tariffs, various courts' interpretations of the tariff statutes demonstrate that it would be reasonable for a defendant to have believed that as long as he did not unload cervids in Kentucky, he would not be importing them. Transitory passage through or across is not synonymous with the introduction or placement of goods for a specific purpose. The statute does not provide any limitation on the common meaning of *importation.*

The confusion presented by the case before us is an apt and precise illustration of the very mischief that the void-for-vagueness doctrine seeks to prevent. The trial court correctly examined the legislative intent and concluded that the General Assembly aimed to prohibit introduction of cervids into the state for any purpose whatsoever. However, the trial court also reached the conclusion that the final language could provide for four possible outcomes reasonably capable of being construed from the statutory language:

> [N]o cervid may enter the Commonwealth from any other jurisdiction; or no cervid may enter the Commonwealth with the intent to remain here; or no cervid may enter the Commonwealth for the purpose of resale; or no cervid may be transported from another state, [sic] through the Commonwealth to another state.

The trial court's hypothetical outcomes are all reasonable. Other statutes in KRS Chapter 150 differentiate between *transport* and *import*—as does a similar federal regulation pertaining to endangered spe-

cies. 50 C.F.R. § 17.21(b).[2]

■ In construing a law under the void-for-vagueness doctrine, a court must do so with keen regard to the facts before it. *U.S. v. Powell*, 423 U.S. 87, 92, 96 S.Ct. 316, 46 L.Ed.2d 228 (1975). In this case, the trial court's research indicates that Looper had no notice that merely driving through Kentucky with his deer and antelope was a felony. The only word referring to actions in the applicable statute is *importation*, which can reasonably be interpreted as carrying a connotation of intent to unlade. Such was not his intention. Nevertheless, even if he had intended to unlade, yet another conundrum presents itself. There is no administrative regulation construing the statute. If as a layman Looper had sought any additional information, at best he might have consulted the Department of Fish and Wildlife's public website. There he would have learned that "[w]hole **carcasses** of deer or elk harvested in CWD-positive states may not come into (or pass through) Kentucky." (Emphasis added.) Even so, he would not have received information about **live** cervids. The website for the Department of Fish and Wildlife is http://www.kdfwr.state.ky.us/cwdfaq.asp (last consulted on 03/13/2009).

Looper complied with the regulations of both Missouri and Tennessee by submitting to inspections and obtaining permits. He engaged in no deception or subterfuge. It is reasonable to believe that he drove through Kentucky in good faith—having no fair notice from a statute lacking the precision to alert as to the possibility of criminal consequences. We agree that the trial court properly determined that KRS 150.740 is unconstitutional as applied in this case as being void for vagueness.

We affirm the order of the McCracken Circuit Court.

ALL CONCUR.

**2.** "Any shipment in transit through the United States is an importation[.]"